No. 23-2235

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

———————

NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the
International Federation of Professional and Technical Engineers,

*Plaintiff-Appellant,*

v.

DAVID L. NEAL, in his official capacity as Director of the Executive Office for
Immigration Review,

*Defendant-Appellee.*

———————

On Appeal from the United States District Court
for the Eastern District of Virginia – No. 1:20-cv-00731-LMB-JFA (Brinkema, L.)

———————

**BRIEF FOR APPELLEE**

———————

<div style="margin-left:40%">

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JESSICA D. ABER
  *United States Attorney*

MICHAEL S. RAAB
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7710*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9039*

</div>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................................... 1

STATEMENT OF JURISDICTION ....................................................................... 2

STATEMENT OF THE ISSUE ............................................................................... 3

PERTINENT STATUTES AND REGULATIONS.............................................. 3

STATEMENT OF THE CASE ................................................................................ 3

I.    Statutory and Regulatory Background.................................................... 3

    A.    The Civil Service Reform Act of 1978......................................... 3

    B.    The Executive Office for Immigration Review and Federal Ethics Regulations ................................................................................... 6

II.   Factual and Procedural Background........................................................ 7

    A.    EOIR's Speaking Engagement Policies......................................... 7

    B.    Prior Proceedings ....................................................................... 11

SUMMARY OF ARGUMENT ............................................................................ 13

STANDARD OF REVIEW.................................................................................... 16

ARGUMENT .......................................................................................................... 16

I.    The Civil Service Reform Act Precludes Jurisdiction Over NAIJ's Claims ...... 16

    A.    The CSRA Provides the Exclusive Remedial Schemes for Claims Arising Out of Federal Employment......................................... 16

    B.    NAIJ's Claims Are of the Type Channeled Through the CSRA Framework ................................................................................. 18

        1.    The CSRA provides for meaningful judicial review of NAIJ's challenge ............................................................... 19

2.      NAIJ's challenge is not wholly collateral to the CSRA ................ 34

3.      NAIJ's claims fall within the MSPB's expertise ........................... 35

CONCLUSION ........................................................................................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*American Fed'n of Gov't Emps. v. Secretary of the Air Force*,
716 F.3d 633 (D.C. Cir. 2013) ................................................................ 23, 27, 33

*American Fed'n of Gov't Emps. v. Trump*,
929 F.3d 748 (D.C. Cir. 2019) ................................................................ 27, 33, 34

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ................................................................ 33

*Axon Enter., Inc. v. Federal Trade Comm'n*,
598 U.S. 175 (2023) ................................................................ 18, 28

*Bennett v. U.S. Sec. & Exchange Comm'n*,
844 F.3d 174 (4th Cir. 2016) ................................................................ 16, 17, 18, 27, 33

*Elgin v. Department of the Treasury*,
567 U.S. 1 (2012) ................................................................ 2, 4, 12, 13, 14, 15, 16,
17, 19, 22, 25, 26, 29, 35, 36

*Feds for Medical Freedom v. Biden*,
63 F.4th 366 (5th Cir. 2023), *cert. granted and vacated as moot*,
144 S. Ct. 480 (2023) ................................................................ 24, 25, 32

*Fernandez v. Keisler*,
502 F.3d 337 (4th Cir. 2007) ................................................................ 33

*Ferry v. Hayden*,
954 F.2d 658 (11th Cir. 1992) ................................................................ 21, 32

*Fleming v. Spencer*,
718 F. App'x 185 (4th Cir. 2018) ................................................................ 17, 20-21, 32, 35

*Franken v. Bernhardt*,
763 F. App'x 678 (10th Cir. 2019) ................................................................ 31

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ................................................................ 27, 28

*Hall v. Clinton*,
235 F.3d 202 (4th Cir. 2000) ................................................................ 13-14, 18, 19, 24, 27

*Irizarry v. United States*,
427 F.3d 76 (1st Cir. 2005) ................................................................ 32

*Jarkesy v. Securities & Exch. Comm'n,*
    803 F.3d 9 (D.C. Cir. 2015) ........................................................................ 18

*Kloeckner v. Solis,*
    568 U.S. 41 (2012) ....................................................................................... 4

*Krafsur v. Davenport,*
    736 F.3d 1032 (6th Cir. 2013) ........................................................... 5, 21, 31

*Lewis v. Casey,*
    518 U.S. 343 (1996) ................................................................................... 33

*Lindahl v. Office of Pers. Mgmt.,*
    470 U.S. 768 (1985) ..................................................................................... 4

*NAIJ v. Neal:*
    No. 20-1868, 2022 WL 2045339 (4th Cir. June 7, 2022) ..................... 1-2, 11
    No. 20-1868, 2022 WL 997223 (4th Cir. Apr. 19, 2022) ...................... 2, 11

*Payne v. Biden,*
    62 F.4th 598 (D.C. Cir. 2023), *cert. granted and vacated as moot,*
    144 S. Ct. 480 (2023) ........................................................................... 24, 34

*Pinar v. Dole,*
    747 F.2d 899 (4th Cir. 1984) ................................................................. 5, 31

*Rydie v. Biden,*
    No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ...........................
    ........................................................... 4, 6, 15, 19, 20, 24, 25, 27, 29, 30, 35

*Sanjour v. EPA,*
    56 F.3d 85 (D.C. Cir. 1995) (en banc) .................................................... 34

*Special Counsel ex rel. Cefalu v. Department of Justice,*
    No. CB-1214-13-0187-T-1, 2014 WL 5410672 (M.S.P.B. 2014) ............ 21

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................... 33

*Thompkins v. U.S. Dep't of Veterans Affairs,*
    16 F.4th 733 (10th Cir. 2021) .................................................................. 34

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ............................................................. 13, 26, 27, 33

*U.S. DOJ EOIR*, 71 F.L.R.A. 1046, 1048 (2020),
   *reconsideration denied*, 72 F.L.R.A. 622,
   *second reconsideration denied*, 72 F.L.R.A. 733 (2022) ..................................... 7

*United States v. Erika, Inc.*,
   456 U.S. 201 (1982) ................................................................. 31

*United States v. Fausto*,
   484 U.S. 439 (1988) ................................... 3, 4, 15, 16, 21, 22, 23, 24, 27, 31

*United States v. L.A. Tucker Truck Lines, Inc.*,
   344 U.S. 33 (1952) .................................................................. 33

*United States v. National Treasury Employees Union*,
   513 U.S. 454 (1995) ................................................................. 33

*Weaver v. U.S. Info. Agency*,
   87 F.3d 1429 (D.C. Cir. 1996) ............................................... 5, 32, 34

*Wolfe v. Barnhart*,
   446 F.3d 1096 (10th Cir. 2006) ...................................................... 34

**Statutes:**

Civil Service Reform Act of 1978,
   Pub. L. No. 95-454, 92 Stat. 1111 ..................................................... 3
     5 U.S.C. § 1101 *et seq.* ............................................................. 2
       5 U.S.C. § 1212(a)(2) ........................................................... 17
       5 U.S.C. § 1214(a) ............................................................. 20
       5 U.S.C. § 1214(a)(1)(A) ...................................................... 5, 17
       5 U.S.C. § 1214(a)(3) ......................................................... 6, 17
       5 U.S.C. § 1214(b)(2)(B) ...................................................... 5, 31
       5 U.S.C. § 1214(b)(2)(C) ...................................................... 5, 20
       5 U.S.C. § 1214(b)(4)(A) ......................................................... 20
       5 U.S.C. § 1214(c) ........................................................... 5, 20
       5 U.S.C. § 1221(a) ............................................................... 6
       5 U.S.C. § 1221(h) ............................................................... 6
       5 U.S.C. § 2301(b) ............................................................... 4
       5 U.S.C. § 2301(b)(2) ...................................................... 4, 17, 20
       5 U.S.C. § 2302 ................................................................. 17
       5 U.S.C. § 2302(a) ............................................................. 17
       5 U.S.C. § 2302(a)(2)(A) .......................................................... 4

5 U.S.C. § 2302(a)(2)(A)(xii) .................................................. 19, 20, 29
5 U.S.C. § 2302(b)(1)-(14) ........................................................ 17
5 U.S.C. § 2302(b)(12) ............................................................. 20
5 U.S.C. § 7502 ..................................................................... 19
5 U.S.C. §§ 7321-7326 ............................................................... 7
5 U.S.C. § 7512 ............................................................... 6, 17, 19
5 U.S.C. § 7512(1)-(5) ............................................................... 6
5 U.S.C. § 7513 ..................................................................... 20
5 U.S.C. § 7513(d) ............................................................... 6, 17
5 U.S.C. § 7703(b) ................................................................... 6
5 U.S.C. § 7703(b)(1) ............................................................... 17
5 U.S.C. § 7703(b)(1)(A) ......................................................... 5, 20

8 U.S.C. § 1101(b)(4) ................................................................ 6

28 U.S.C. § 1291 ..................................................................... 3

28 U.S.C. § 1295(a)(9) ............................................................... 6

28 U.S.C. § 1331 ..................................................................... 2


**Regulations:**

5 C.F.R. pt. 2635 .................................................................... 7
  5 C.F.R. § 2635.101(b)(14) ........................................................ 7
  5 C.F.R. § 2635.501(a) ............................................................. 7

5 C.F.R. pt. 3801 .................................................................... 7
  5 C.F.R. § 3801.106 ............................................................... 7


**Legislative Material:**

S. Rep. No. 95-969 (1978) ........................................................... 3


**Other Authority:**

Ethics and Professionalism Guide for Immigration Judges,
  https://perma.cc/M6LA-JUFZ:
    § Preamble ...................................................................... 7

§ V ............................................................................................................ 7

§ VI ........................................................................................................... 7

§ XXI ......................................................................................................... 8

§ XXVI ....................................................................................................... 7

Julie Tsirkin and Julia Ainsley, *Lawmakers Ask Why The Biden Admin Has Told Immigration Judges Not To Talk To The Media Without Permission*, NBC News (Mar. 22, 2024), https://perma.cc/Y2SE-3C5N ............................................ 11

Whistleblower Protections, Justice Manual § 1-7.120, https://www.justice.gov/jm/jm-1-7000-media-relations .................................. 11

## INTRODUCTION

The Executive Office for Immigration Review (EOIR) is responsible for ensuring the fair, efficient, and uniform operation of the nation's immigration courts, which adjudicate hundreds of thousands of cases each year.  To accomplish that mission, EOIR employs more than 700 immigration judges—each directly appointed by the Attorney General—to adjudicate these cases, participate in the development of EOIR policy, and represent EOIR to the public.  In recognition of the fact that immigration judges have a responsibility to maintain an appearance of impartiality and that their public speech can affect the agency's overall mission, EOIR has worked carefully to develop and adjust policies requiring immigration judges to seek prior approval of potential speaking and writing engagements to determine if the engagement would comport with applicable ethics requirements.

In a prior appeal, plaintiff National Association of Immigration Judges (NAIJ)—who at the time served as the certified bargaining representative for non-supervisory immigration judges—sought to enjoin a version of EOIR's speaking engagement policy first issued in 2017.  The district court denied NAIJ's request for a preliminary injunction, concluding that the union's challenge to the agency's personnel policy had to be channeled through the comprehensive scheme for administrative and judicial review for labor-relations disputes provided by the Federal Service Labor-Management Relations Statute.  This Court affirmed that decision in an unpublished, per curiam opinion.  *NAIJ v. Neal*, No. 20-1868, 2022 WL 997223 (4th

Cir. Apr. 19, 2022). However, before this Court's mandate issued, the Regional Director of the Federal Labor Relations Authority (FLRA) revoked NAIJ's certification as the bargaining representative for immigration judges. As a result, this Court vacated its decision and remanded to the district court for further proceedings. *NAIJ v. Neal*, No. 20-1868, 2022 WL 2045339 (4th Cir. June 7, 2022).

On remand, NAIJ—which now operates as a voluntary organization of immigration judges—filed an amended complaint challenging a new version of the speaking engagement policy on behalf of its members. The district court dismissed NAIJ's claim for lack of jurisdiction, holding that NAIJ's claim was precluded by the Civil Service Reform Act of 1978 (CSRA), as amended, 5 U.S.C. § 1101 *et seq.* Like the Federal Service Labor-Management Relations Statute, the CSRA creates a comprehensive and exclusive scheme for resolving claims arising out of federal employment that precludes district-court jurisdiction over such claims. *See Elgin v. Department of the Treasury*, 567 U.S. 1, 11-12 (2012). Because the CSRA precludes district-court jurisdiction over NAIJ's claims, this Court should affirm.

## STATEMENT OF JURISDICTION

NAIJ invoked the district court's jurisdiction under 28 U.S.C. § 1331. As discussed in further detail below, however, the district court lacked jurisdiction over plaintiffs' action because it is precluded by the Civil Service Reform Act of 1978, as amended, 5 U.S.C. § 1101 *et seq.* The district court entered an order granting the government's motion to dismiss on September 21, 2023. JA107. NAIJ filed a timely

notice of appeal on November 19, 2023.  JA111-112.  This Court has appellate

jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that it lacks jurisdiction over plaintiff's

claims.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### I.      Statutory and Regulatory Background

### A.      The Civil Service Reform Act of 1978

Before 1978, federal employment law consisted of an "outdated patchwork of

statutes and rules built up over almost a century."  *United States v. Fausto*, 484 U.S. 439,

444 (1988) (quoting S. Rep. No. 95-969, at 3 (1978)).  There was no systematic

scheme for reviewing adverse employment actions.  Some employees were afforded

administrative review of employment actions by statute or executive order; others had

no right to such review.  Employees often sought judicial review of agency personnel

decisions in "district courts in all Circuits and the Court of Claims," through "various

forms of action . . . , including suits for mandamus, injunction, and declaratory

judgment."  *Id.* at 444-45 (citations omitted); *see also* S. Rep. No. 95-969, at 63.

Congress enacted the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92

Stat. 1111, to replace these "haphazard arrangements for administrative and judicial

review" of personnel actions. *Fausto*, 484 U.S. at 444; *see also Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 797-99 (1985). In so doing, Congress created an "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. This comprehensive framework regulates virtually every aspect of federal employment and "prescribes in great detail the protections and remedies applicable to [adverse personnel] action[s], including the availability of administrative and judicial review." *Id.* at 443; *see also Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *3 (4th Cir. Apr. 19, 2022).

Under the CSRA, as amended, different administrative and judicial review procedures apply depending on, *inter alia*, the nature of the challenged employment action and the types of claims an employee asserts. *See generally Kloeckner v. Solis*, 568 U.S. 41, 44-45 (2012); *Elgin v. Department of the Treasury*, 567 U.S. 1, 11-12 (2012); *Fausto*, 484 U.S. at 445-47. Two of those procedures are relevant here. First, Chapter 23 of the CSRA lays out "merit systems principles" by which agencies must abide. 5 U.S.C. § 2301(b). One such principle provides that "[a]ll employees . . . should receive fair and equitable treatment . . . with proper regard for their . . . constitutional rights." *Id.* § 2301(b)(2). The chapter further classifies certain actions taken in violation of these principles—including "disciplinary or corrective action" or any "significant change" in an employee's "duties, responsibilities, or working conditions"—as "prohibited personnel practice[s]." *Id.* § 2302(a)(2)(A). Courts have explained that

4

these prohibited practices include claims that a personnel action violated the Constitution. *See, e.g.*, *Krafsur v. Davenport*, 736 F.3d 1032, 1034-35, 1038 (6th Cir. 2013); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1432 (D.C. Cir. 1996); *cf. Pinar v. Dole*, 747 F.2d 899, 906, 908 (4th Cir. 1984).

A federal employee who has experienced a prohibited personnel practice may file the allegation with the Office of the Special Counsel (Special Counsel or OSC). 5 U.S.C. § 1214(a)(1)(A). The Special Counsel is then required to "investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action." *Id.* If the Special Counsel concludes that there are such grounds, it "shall report the determination together with any findings or recommendations" to, *inter alia*, the Merit Systems Protection Board (MSPB) and the employing agency. *Id.* § 1214(b)(2)(B). If the employing agency fails to correct the personnel practice, the Special Counsel "may petition" the MSPB for an order directing the agency to take corrective action. *Id.* § 1214(b)(2)(C). An employee adversely affected by the MSPB's final decision may obtain judicial review in the United States Court of Appeals for the Federal Circuit. *Id.* §§ 1214(c), 7703(b)(1)(A).

If the Special Counsel determines that there are not reasonable grounds to believe a prohibited personnel practice has occurred, the CSRA does not provide for any further administrative or judicial review, with one exception: after exhausting the OSC remedy, employees may pursue an "individual right of action" in the MSPB for

5

whistleblower claims and claims alleging retaliation for exercising certain appeal and related rights. 5 U.S.C. §§ 1214(a)(3), 1221(a). This individual right of action does not extend to any other claims of prohibited personnel practices. The MSPB's final decision is subject to judicial review. *Id.* §§ 1221(h), 7703(b).

Second, federal employees can challenge certain adverse actions through the statutory scheme outlined in Chapter 75 of the CSRA. *See Rydie*, 2022 WL 1153249, at *3. This scheme governs, *inter alia*, any challenge to employee removal, suspensions for more than 14 days, or reduction in pay. 5 U.S.C. § 7512(1)-(5). Employees subject to such adverse actions do not need to petition the Special Counsel, but can instead appeal directly to the MSPB. *Id.* §§ 7512, 7513(d). Any employee aggrieved by the final decision of the MSPB may obtain judicial review of the decision. *Id.* § 7703(a)(1). Such review takes place in the Federal Circuit. 28 U.S.C. § 1295(a)(9).

## B.    The Executive Office for Immigration Review and Federal Ethics Regulations

The Executive Office for Immigration Review is a component of the Department of Justice (DOJ) that has been delegated adjudicatory authority over immigration proceedings. EOIR employs more than 700 immigration judges across the country to determine whether noncitizens charged with violating immigration law should be ordered removed from the United States. *See* 8 U.S.C. § 1101(b)(4). Like every career employee of the federal executive branch, immigration judges are subject to broad ethical restrictions that are designed to avoid the appearance of bias and

6

preserve an image of impartiality.  *See* 5 U.S.C. §§ 7321-7326; 5 C.F.R. pt. 2635; *id.*
§ 2635.101(b)(14).

Immigration judges are also subject to supplemental regulations that apply to all
DOJ employees.  5 C.F.R. pt. 3801.  Among other things, these regulations generally
prohibit outside employment that involves the practice of law or the subject matter
that is in the employee's area of responsibility, absent an ethical waiver from the
agency.  *Id.* § 3801.106.  In addition, immigration judges are subject to supplemental
ethics guidelines that specifically pertain to their unique responsibilities and emphasize
the importance of avoiding the appearance of bias or partiality in their adjudicatory
role.  *See* Ethics and Professionalism Guide for Immigration Judges §§ Preamble, V,
VI, XXVI, https://perma.cc/M6LA-JUFZ (2011 Ethics Guide); 5 C.F.R.
§§ 2635.101(b)(14), 2635.501(a).

## II.     Factual and Procedural Background

### A.     EOIR's Speaking Engagement Policies

Plaintiff NAIJ formerly served as the bargaining representative for non-
supervisory immigration judges but is now a "voluntary association of immigration
judges."  Br. 4.  As NAIJ recognizes, Br. 5, the Federal Labor Relations Authority has
decertified NAIJ as a bargaining representative.[1]

---

[1] *See U.S. DOJ EOIR*, 71 F.L.R.A. 1046, 1048 (2020), *reconsideration denied*, 72
F.L.R.A. 622, *second reconsideration denied*, 72 F.L.R.A. 733 (2022).

While NAIJ served as the bargaining representative for non-supervisory immigration judges, it collaborated with EOIR over a number of personnel policies, including EOIR's policy of reviewing requests by immigration judges to make public speeches or publish written work. In 2011, EOIR and NAIJ jointly issued the Ethics & Professionalism Guide for Immigration Judges, which memorialized certain ethical conduct standards, including the longstanding requirement that immigration judges "must seek prior supervisory and ethics approval for written work and speeches." 2011 Ethics Guide § XXI. However, the Ethics Guide did not identify a specific review process for immigration judges to obtain ethics approval.

Prior to 2017, immigration judges would submit a request to the immigration judge's supervising Assistant Chief Immigration Judge. JA19 (Second Amended Complaint ¶ 18). If that supervisor granted the request, it was forwarded to EOIR's Ethics Office for ethics guidance. Under this scheme, EOIR drew a distinction between "official capacity" engagements and "personal capacity" engagements. According to NAIJ, immigration judges were "generally permitted" to speak and appear in their personal capacities while using their official titles, so long as they provided a disclaimer stating the appearance and speech was occurring in a personal capacity and the views presented were their own. JA19 (Second Amended Complaint ¶ 18).

In 2017, EOIR issued a memorandum that outlined a standardized formal review process for employee requests to participate in speaking engagements. JA41-

8

45.  Under this process, after an immigration judge submitted a request to attend a speaking engagement, an Assistant Chief Immigration Judge would determine whether the speaking engagement pertained to speech in a personal or an official capacity.  After obtaining supervisory approval, official capacity speech requests would be reviewed by the Office of General Counsel and the Office of Communications and Legislative Affairs.

EOIR then issued new guidance in 2020 that launched an automated internal portal for submission of speaking requests under the 2017 policy.  JA48-53.  That guidance explained that all requests should be submitted for supervisory approval through the internal portal.  After preliminary approval, the request would be forwarded to EOIR's Speaking Engagement Team (SET)—comprised of personnel from the Office of Policy, the Office of the General Counsel, the Office of the Director, and EOIR's Ethics Office—for further review.  The SET would then return its recommendation to the employee's supervisor, who would make the final decision on the speaking request with the benefit of SET review.  The 2020 memorandum also clarified that "[a]n employee who has been invited to participate in a speaking engagement related to immigration law or policy issues, the employee's official EOIR duties or position, or any agency programs and policies[] . . . has been invited in an official capacity regardless of how the invitation is labeled."  JA49.

On October 12, 2021, EOIR cancelled the policy set forth in the 2017 and 2020 memoranda, replacing it with the one now at issue.  JA56-62 (2021 Policy).  As

9

relevant here, the 2021 Policy eliminates the requirement that employees receive supervisory approval to speak in a personal capacity on topics unrelated to the employee's official duties. Employees are still encouraged (though not required) to consult with EOIR's Ethics Office regarding such speaking engagements.

The 2021 Policy maintains, however, that an employee must obtain prior approval when the employee "is invited to participate in an event because of their official position, is expected to discuss agency policies, programs, or a subject matter that directly relates to their official duties, or otherwise appear on behalf of the agency." JA57. As the policy explains, such speaking engagements "provide the public with the impression that the speech has the imprimatur of the agency, and therefore, require close coordination with the employee's supervisor." JA57.

Notably, however, the 2021 Policy expressly "encourages" its employees "to engage in [such] public speaking opportunities as a means of keeping the public informed of EOIR's mission, operations, and programs," so long as the employee receives the requisite approval. JA56. In furtherance of this goal, the 2021 Policy creates an exception for requests to teach courses related to immigration law, which do not need to be forwarded to SET, and creates a "blanket approval" process for employees who engage with the public in an official capacity on a recurring or repetitive basis. JA60. EOIR has also made clear that the 2021 Policy protects

whistleblowers because it does not supersede, conflict with, or otherwise alter an employee's right to make protected disclosures.[2]

## B.  Prior Proceedings

**1.**  NAIJ filed this suit six months after the issuance of the 2020 memorandum, alleging that the prior speaking engagement policy violated the First and Fifth Amendments.  NAIJ also moved for a preliminary injunction, which was denied on the ground that the district court lacked jurisdiction over NAIJ's claims.  On appeal, this Court affirmed the district court's jurisdictional ruling, concluding that—at least insofar as NAIJ remained the certified bargaining representative for immigration judges—its challenge "must proceed through the administrative process provided by the Federal Service Labor-Management Relations Statute."  *NAIJ v. Neal*, No. 20-1868, 2022 WL 997223, *2 (4th Cir. Apr. 4), *reh'g granted and vacated as moot*, No. 20-1868, 2022 WL 2045339 (4th Cir. June 7, 2022).  However, before the mandate issued, the Regional Director of the FLRA revoked NAIJ's certification as the bargaining

---

[2]  *See* Julie Tsirkin and Julia Ainsley, *Lawmakers Ask Why The Biden Admin Has Told Immigration Judges Not To Talk To The Media Without Permission*, NBC NEWS (Mar. 22, 2024), https://perma.cc/Y2SE-3C5N (statement by EOIR that the policy "does not restrict the rights of individuals to make protected disclosures, including by whistleblowers, to Congress or anyone else"); *see also* Whistleblower Protections, JUSTICE MANUAL § 1-7.120, https://www.justice.gov/jm/jm-1-7000-media-relations (last accessed Mar. 22, 2024).

representative for immigration judges, and this Court vacated the district court's order

and remanded for further proceedings. *NAIJ v. Neal*, 2022 WL 2045339, at *1.[3]

**2.** On remand, NAIJ—now appearing as a voluntary organization of

immigration judges—filed an amended complaint claiming that EOIR's current

speaking engagement policy imposes an unconstitutional prior restraint on

immigration judges' speech and is void for vagueness under the First and Fifth

Amendments. JA12-38. The government moved to dismiss for lack of jurisdiction

and for failure to state a claim.

In September 2023, the district court granted the government's motion to

dismiss. JA63-108. At the threshold, the district court held that NAIJ had standing

to bring this claim on behalf of its members. JA77-83. The court found that NAIJ

had adequately alleged that immigration judges were injured by the 2021 Policy

because the threat of discipline for failing to comply had an "objectively reasonable

chilling effect" on immigration judges' speech. JA79-80.

The court held, however, that NAIJ's claims are jurisdictionally barred by the

CSRA. JA83-107. As the court explained, the CSRA provides a "carefully crafted

remedial administrative review scheme" for the adjudication of federal employees'

---

[3] In September 2022, NAIJ filed a petition with the FLRA seeking
recertification as a union. *See* NAIJ (Petitioner/Union) & USDOJ
(Respondent/Agency), WA-RP-22-0054 (F.L.R.A. Sep. 14, 2022). That petition was
withdrawn on February 2, 2023, without prejudice to refile.

personnel claims, JA84, that precludes district court jurisdiction over covered actions brought by covered federal employees, JA87 (citing *Elgin*, 567 U.S. at 11-12). The court further held that this scheme expressly provides an avenue for immigration judges—who are CSRA covered employees—to raise an administrative challenge to the 2021 Policy, subject to judicial review in the Federal Circuit. JA89-96. Accordingly, the court concluded that NAIJ's claim is of the type Congress intended to be reviewed within the CSRA's administrative review framework and that this precludes district-court jurisdiction over the claim.

## SUMMARY OF ARGUMENT

The district court correctly determined that the CSRA precludes jurisdiction over this case. As the Supreme Court recognized in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Congress may channel the review of certain claims through a defined framework of administrative and judicial review. When Congress does so, federal district courts lack subject-matter jurisdiction over those claims. And as the Supreme Court held in *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012), the CSRA's comprehensive framework for the administrative and judicial review of personnel actions against federal employees has exactly that effect: it bars employees from challenging such actions in district court.

NAIJ's challenge to EOIR's speaking-engagement policy falls within the CSRA's preclusive scope. As this Court has explained, the CSRA represents "the exclusive remedy for claims arising out of federal employment." *Hall v. Clinton*, 235

13

F.3d 202, 203 (4th Cir. 2000).  NAIJ's challenge to the 2021 Policy arises directly out of immigration judges' employment with EOIR.  At the heart of NAIJ's complaint— and indeed, its asserted basis for standing—is that its members, who are CSRA covered employees, are dissatisfied with the conditions the policy imposes on their continued employment and fear future disciplinary action if they do not comply with the policy.

Through this appeal, NAIJ urges this Court to adopt a conspicuous exception to the CSRA's otherwise comprehensive and exclusive regime.  It asserts that the CSRA does not permit pre-enforcement constitutional challenges to agency personnel policies like the one at issue and, thus, that Congress must not have intended to preclude district-court jurisdiction over such challenges.  But that argument cannot be squared with *Elgin*, which held that Congress intended for facial constitutional challenges by covered employees to be channeled through the CSRA's exclusive procedures.  *Elgin*, 567 U.S. at 12-13.  Nothing in *Elgin* suggests that a federal employee who faces prospective discipline can circumvent the CSRA framework simply by suing in district court prior to the imposition of discipline.

NAIJ's contrary understanding of how the CSRA works would seriously undermine the CSRA's "objective of creating an integrated scheme of review" that ensures that federal workplaces across the country follow a uniform body of law developed by the Federal Circuit.  *Elgin*, 567 U.S. at 14.  In NAIJ's view, a plaintiff who indisputably would have to proceed under the CSRA after suffering an adverse

14

personnel action could circumvent this process and obtain immediate judicial review outside of the Federal Circuit by filing suit challenging the policy on which that hypothetical personnel action would be based.  Such a regime would create the "very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid."  *Id.*

In any event, NAIJ is wrong to suggest that federal employees cannot assert pre-enforcement challenges under the CSRA framework.  As the district court found, and as this Court recently recognized in *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022), there are in fact limited pathways for pre-enforcement review of some types of policies governing federal employees.  NAIJ's various arguments that these pathways either do not apply or else do not provide meaningful judicial review are unavailing.  And more fundamentally, those arguments miss the critical point.  Congress designed the CSRA's comprehensive remedial scheme with care, intentionally providing—and not providing—for particular forums, procedures, and remedies that apply to claims arising out of federal employment.  If that comprehensive remedial scheme does not provide the specific relief NAIJ seeks, that is a deliberate choice—rather than an oversight—which must be given effect.  *United States v. Fausto*, 484 U.S. 439, 455 (1988); *see also Elgin*, 567 U.S. at 11.  NAIJ cannot circumvent any such deliberate exclusion by suing in district court.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal of a complaint for lack of subject-matter jurisdiction de novo. *Bennett v. U.S. Sec. & Exchange Comm'n*, 844 F.3d 174, 178 (4th Cir. 2016).

## ARGUMENT

### I.    The Civil Service Reform Act Precludes Jurisdiction Over NAIJ's Claims

#### A.    The CSRA Provides the Exclusive Remedial Schemes for Claims Arising Out of Federal Employment

Through the CSRA, Congress established an "'integrated scheme of administrative and judicial review' for aggrieved federal employees," that—aside from limited exceptions for certain types of discrimination claims not at issue here—provides the exclusive means by which covered employees may challenge adverse employment actions. *Elgin v. Department of Treasury*, 567 U.S. 1, 5, 13-14 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)).  As the Supreme Court explained in *Elgin*, federal employment law prior to the CSRA's enactment consisted of an "outdated patchwork of statutes and rules that afforded employees the right to challenge employing agency actions in district courts across the country," and which produced problems of parallel litigation, inconsistent decision-making, and duplicative judicial review of the same or similar matters.  *Id.* at 13-14 (quotation marks omitted).

To remedy these problems, Congress set forth in "painstaking detail" "the method for covered employees to obtain review of adverse employment actions."

16

*Elgin*, 567 U.S. at 11-12. As relevant here, serious "adverse actions"—including removal from service and suspension for more than 14 days, 5 U.S.C. § 7512—may generally be appealed by an aggrieved employee directly to the MSPB, with judicial review of the MSPB's decision in the Federal Circuit, *see id.* §§ 7513(d), 7703(b)(1). A challenge to a less severe "personnel action" may generally be sought through agency administrative or negotiated grievance procedures, through an equal employment opportunity complaint if a prohibited basis is alleged, or from the Office of Special Counsel (OSC) if the applicant or employee alleges a prohibited reason for the action. *Id.* §§ 1214(a)(3), 2302.[4]

By setting forth this scheme in such intricate detail, Congress made clear its intent "to deny [covered] employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 11-12. Given that history, this Court and the Supreme Court have repeatedly observed that the CSRA provides the exclusive means by which covered federal employees may bring claims arising out of their employment. *Id.* at 13; *see also*

---

[4] As discussed further below, the CSRA defines "personnel action" broadly to extend beyond disciplinary or pre-disciplinary corrective actions. *See* 5 U.S.C. § 2302(a). Congress authorized OSC to investigate whether a challenged "personnel action" constitutes a "prohibited personnel practice[]," including whether the action violates a law that concerns "fair and equitable treatment" of federal employees "with proper regard for their . . . constitutional rights." *Id.* §§ 1212(a)(2), 1214(a)(1)(A), 2301(b)(2), 2302(b)(1)-(14). OSC thus has jurisdiction to investigate an employee's claim that a personnel action violated the Constitution. *See, e.g., Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) (per curiam).

*Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 180-81 (4th Cir. 2016) (discussing *Elgin*); *Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000).

**B.      NAIJ's Claims Are of the Type Channeled Through the CSRA Framework**

Where, as here, Congress has created a statutory scheme designed to preclude district-court review, courts have generally required a "strong countervailing rationale" for permitting a claim to nevertheless proceed in district court. *Jarkesy v. Securities & Exch. Comm'n*, 803 F.3d 9, 17 (D.C. Cir. 2015) (quotation marks omitted). Three guideposts help to determine whether particular claims may be brought in district court: (1) whether a finding of preclusion could "foreclose[] all meaningful judicial review" of the claim, (2) whether a litigant's suit is "wholly collateral" to the statutory scheme, and (3) whether the claims are outside the expertise of the agency charged with initially reviewing them. *Bennett*, 844 F.3d at 181 (quotation marks omitted). These considerations do not form "three distinct inputs into a strict mathematical formula." *Jarkesy*, 803 F.3d at 17. Rather, they serve as "general guideposts useful for" addressing the central inquiry of "whether the particular claims at issue fall outside an overarching congressional design." *Id.*; *see also Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 186 (2023) ("The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question.").

18

Here, as in *Elgin*, all three guideposts suggest the same result: NAIJ may not circumvent the CSRA's procedures by filing suit in district court. *See* 567 U.S. at 17, 22-23. According to the Second Amended Complaint, the 2021 Policy NAIJ wishes to challenge represents an alleged change in the outside speaking that EOIR permitted "[f]or years," and immigration judges who violate the policy face a range of disciplinary sanctions, "including reprimand, suspension, and even removal from the federal service." JA13, JA19, JA20, JA26 (SAC ¶¶ 1, 2, 17, 20, 40). In other words, NAIJ's challenge arises directly out of immigration judges' employment with EOIR, their dissatisfaction with the conditions of that employment, and their fear of future disciplinary action resulting from the allegedly unlawful policy. Such employee grievances plainly fall within the scope of the CSRA and can be asserted through the CSRA procedures. *See, e.g.*, 5 U.S.C. § 2302(a)(2)(A)(xii) (covering challenges to "significant change[s] in duties, responsibilities, or working conditions"); *id.* §§ 7502, 7512 (covering employee suspensions and removals); *id.* § 2302(a)(2)(A)(iii) (covering other discipline). The CSRA therefore provides the exclusive remedy. *Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000) ("[T]he CSRA constitutes the exclusive remedy for claims arising out of federal employment[] . . . .").

### 1.     The CSRA provides for meaningful judicial review of NAIJ's challenge

As the district court recognized, the CSRA provides immigration judges aggrieved by the 2021 Policy with two potential avenues to bring a constitutional

19

challenge to the policy. First, Chapter 75 of the CSRA entitles any employee who faces removal or suspension for violating the policy with the right to appeal that discipline to the MSPB, subject to review in the Federal Circuit. 5 U.S.C. §§ 7513, 7703(b)(1)(A); *see also Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6 (4th Cir. Apr. 19, 2022) (holding that this procedure precludes district-court jurisdiction over pre-enforcement challenges to personnel policies that could result in such discipline).

Second, Chapter 23 of the CSRA permits employees to bring challenges to allegedly unconstitutional changes in their working conditions. *See Rydie*, 2022 WL 1153249, at *5. That chapter lays out the "merit system principles" by which agencies must abide, including that employees must receive "fair and equitable treatment . . . with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2). That chapter further classifies certain violations of laws, rules, or regulations implementing these principles—including when the employing agency makes a "significant change" to employees' "duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii)—as "prohibited personnel practice[s]" for which employees may file a complaint with the Office of Special Counsel, who in turn can petition the MSPB for corrective action, subject to review in the Federal Circuit, *id.* §§ 1214(a), (b)(2)(C), (b)(4)(A), (c), 2302(b)(12), 7703(b)(1)(A). The CSRA thus "empowers the Office of Special Counsel to hear constitutional claims," and such claims may be meaningfully addressed in the Court of Appeals after the conclusion of those proceedings. *Rydie*, 2022 WL 1153249, at *5; *Fleming v. Spencer*, 718 F. App'x

20

185, 188 (4th Cir. 2018); *see also Krafsur v. Davenport*, 736 F.3d 1032, 1034-35, 1038 (6th Cir. 2013); *Ferry v. Hayden*, 954 F.2d 658, 660-62 (11th Cir. 1992); *cf. Special Counsel ex rel. Cefalu v. Department of Justice*, No. CB-1214-13-0187-T-1, 2014 WL 5410672 (M.S.P.B. 2014) (holding that the MSPB had jurisdiction over Special Counsel's complaint for corrective action of a personnel practice that allegedly violated the First Amendment).

In this appeal, NAIJ argues that neither of these congressionally prescribed avenues provide for meaningful judicial review of its constitutional challenge to the 2021 Policy. In NAIJ's view, the CSRA does not permit pre-enforcement facial challenges to agency personnel policies like the one at issue, and that, in practice, proceeding through the CSRA means that immigration judges may not obtain judicial review of their challenge to the 2021 Policy unless they are disciplined for violating it. NAIJ suggests that this means that the pre-enforcement challenge it wishes to bring is not covered by the CSRA and may be brought directly in district court. That argument fails for several independent reasons.

**a.** As an initial matter, NAIJ is wrong to suggest that the CSRA's alleged omission of pre-enforcement review means that Congress intended for such claims to be filed in district court. As discussed further below, the CSRA provides limited pathways for pre-enforcement administrative review. *See* pp. 29-32. But even if it did not, the Supreme Court has made clear that Congress designed the CSRA's comprehensive remedial scheme with care, intentionally providing—and not

providing—for particular forums, procedures, and remedies that apply to claims arising out of federal employment. Thus, if the statute does not permit pre-enforcement challenges, that does not mean (as NAIJ suggests) that any plaintiff who wishes to obtain pre-enforcement relief may proceed directly in district court. Rather, it means that Congress made a deliberate choice to preclude federal employees from raising claims outside the context of an enforcement proceeding.

In *United States v. Fausto*, 484 U.S. 439 (1988), for example, a civilian federal employee was suspended from his job for 30 days without pay for misconduct. *Id.* at 442. The Federal Circuit held that the CSRA did not preclude the employee from suing for backpay because the CSRA did not afford employees in his civil service category any mechanism to challenge a 30-day suspension before the MSPB or a court. *Id.* at 443. The Supreme Court reversed, reasoning that Congress's "deliberate exclusion" of such employees from the CSRA's comprehensive review provisions precluded the plaintiff from seeking review by other means. *Id.* at 455.

The Supreme Court reaffirmed that view of CSRA preclusion in *Elgin*, which (unlike *Fausto*) involved federal employees to whom the CSRA afforded statutory review. *Elgin*, 567 U.S. at 5-7. Those employees were terminated under a statute that prohibits agencies from employing individuals who "knowingly and willfully failed to register" for the Selective Service when required to do so. *Id.* at 7. Rather than pursuing the review mechanisms available to them under the CSRA, the employees sought to challenge the employment bar in district court. *Id.* at 7-8. In holding that

22

the CSRA precluded district-court jurisdiction over that claim, the Supreme Court explained that the CSRA's elaborate framework not only provides the exclusive procedures for employees to whom the CSRA grants administrative and judicial review, it also "demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." *Id.* at 11.

Put differently, the CSRA precludes district-court jurisdiction over NAIJ's claim regardless of whether the statute permits federal employees to bring a pre-enforcement administrative claim. If the CSRA provides for such review, then *Elgin* requires NAIJ's claim to be channeled through the specified pre-enforcement procedures. And if it does not, Congress's deliberate exclusion of a pre-enforcement remedy must be given effect. *Fausto*, 484 U.S. at 455; *see also American Fed'n of Gov't Emps. v. Secretary of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("The CSRA can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not identified some other kind of plaintiff or some other kind of procedure for bringing the claim." (quotation marks omitted)).

Nor can NAIJ evade the CSRA framework by attempting to characterize its claim as something other than a claim arising out of immigration judges' federal employment. Indeed, the district court determined that NAIJ had associational standing to bring a challenge to the 2021 Policy premised on NAIJ's allegations that its members have altered their conduct to avoid disciplinary reprisal. *See* JA81. NAIJ's standing to pursue the claim at issue thus rests on potential personnel actions

23

within the CSRA's scope.  Whether characterized as a preemptive challenge to the potential discipline immigration judges face under the 2021 Policy or the policy's existence in general, the CSRA applies.  That forecloses district-court jurisdiction over NAIJ's claim.  *See Fausto*, 484 U.S. at 455; *see also Hall*, 235 F.3d at 205 (the "salient fact" for preclusion purposes is that the claims "ar[i]se out of [the plaintiff's] federal employment relationship").

In support of its contrary position, NAIJ relies heavily (Br. 19-22, 25-26) on the vacated Fifth Circuit decision in *Feds for Medical Freedom v. Biden*, which held that the CSRA did not apply to a pre-enforcement challenge to executive orders requiring that federal employees and contractors be vaccinated against COVID-19.  63 F.4th 366 (5th Cir. 2023) (en banc), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023).  NAIJ contends that this decision—which was vacated by the Supreme Court after the expiration of the executive orders in question—supports its position that the CSRA applies only after a personnel policy has been applied to a particular individual, and does not apply to preemptive, facial challenges.  But the Fifth Circuit's reasoning is substantively flawed, as reflected in the fact that the now-vacated holding conflicts with decisions of other courts of appeals—including this Court—holding that the CSRA both applied to and precluded district-court jurisdiction over pre-enforcement challenges to the now-expired vaccination policy.  *Rydie*, 2022 WL 1153249, at *8; *Payne v. Biden*, 62 F.4th 598, 603-04 (D.C. Cir. 2023), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023).

24

Moreover, the Fifth Circuit's holding that the CSRA did not apply to the COVID-19 vaccination policy relied in significant part on that court's view that "[e]ven construing the CSRA's language broadly," a mandate involving "irreversible medical decisions made in consultation with private medical professionals outside the federal workplace" could not constitute a "covered personnel action." *Feds for Medical Freedom*, 63 F.4th at 375, 376. That reasoning does not apply here, where the personnel policy in question directly concerns the subject matter of immigration judges' employment. *See* JA57 (requiring employees to seek supervisory approval when they are "invited to participate in an event *because of* their official position" or if they are "expected to discuss agency policies, programs, or a subject matter that *directly relates* to their official duties" (emphasis added)).

NAIJ's contrary understanding of how the CSRA works would also seriously undermine the CSRA's "objective of creating an integrated scheme of review." *Elgin*, 567 U.S. at 14. In NAIJ's view, a plaintiff who indisputably would have to proceed under the CSRA after suffering an adverse personnel action could circumvent this process and obtain immediate federal-court review by filing suit challenging the policy on which that hypothetical personnel action would be based before the personnel action occurs. That would create a bifurcated scheme of judicial review in which district courts across the country would have jurisdiction over all preemptive challenges to employee personnel actions, while identical challenges to those same policies that arise after disciplinary action would continue under the CSRA, subject to

25

review only in the Federal Circuit. That would create the "very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid." *Id.* NAIJ does not explain why Congress would have intended to create such a gaping and unexplained loophole in its otherwise comprehensive and exclusive framework.

   **b.** Second, *Elgin* makes clear, contrary to NAIJ's position here, that the CSRA provides for "meaningful" judicial review of constitutional claims, even if it requires those challenges to be raised after an employee has been disciplined. There, as here, the plaintiffs urged that the CSRA is concerned principally with fact-specific employment disputes, and thus, that Congress did not intend to preclude district-court jurisdiction over facial constitutional challenges to federal statutes. *See, e.g.*, *Elgin*, 567 U.S. at 24 (Alito, J., dissenting). The Supreme Court rejected that position, holding that covered employees must channel both facial and as-applied constitutional challenges through the CSRA's post-enforcement procedures. *Id.* at 15 (majority opinion). In so holding, the Court explained that the statute does not "foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit" after the conclusion of post-enforcement administrative proceedings. *Id.* at 10. The Court held that plaintiffs' facial challenge could be "meaningfully addressed" in the Federal Circuit, *id.* at 16-18 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994)), and that permitting plaintiffs to nevertheless proceed in district court would "seriously undermine[]" the CSRA's

26

"objective of creating an integrated scheme of review," *id.* at 14; *see also Rydie*, 2022 WL 1153249, at *6-7, *6 n.9 ("The Supreme Court has rejected a jurisdictional rule for the CSRA based on the facial/as-applied distinction.").

NAIJ asserts that, unlike the plaintiffs in *Elgin*, its members allegedly intend to comply with the 2021 Policy and thus will likely never be able to raise a post-enforcement challenge to the policy. Br. 21 n.2. But nothing in *Elgin* or this Court's precedents suggests that federal employees can circumvent the CSRA framework simply by suing in district court to enjoin the very policies that, when enforced, would lead to the imposition of discipline subject to the CSRA's post-enforcement procedures. To the contrary, as this Court explained in *Bennett*, "Congress can require persons subject to administrative adjudication to pursue their claims exclusively there first before reaching an Article III court." 844 F.3d at 185 n.12 (citing *Thunder Basin*, 510 U.S. at 216). And plaintiffs cannot "bypass" this deliberate choice "simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" *Id.* at 188; *see also American Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019) ("[I]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." (alteration in original) (quoting *Secretary of the Air Force*, 716 F.3d at 638)).

Relying upon *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), NAIJ suggests (Br. 3, 31 n.5) that its members should not have to "bet the farm," *id.* at 490, by provoking disciplinary action in order to raise a challenge

to the policy. But that case—which concerned an Appointments Clause challenge brought by a regulated entity to the constitutionality of the Public Company Accounting Oversight Board—is readily distinguishable on its facts. As the Court recently explained in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), the challenge in *Free Enterprise* was not to any "specific substantive decision" made by an agency or to any "commonplace procedures agencies use to make" such decisions. *Id.* at 189. Rather, the challenge in *Free Enterprise* (and in *Axon*) was to "the structure or very existence of an agency"—the plaintiffs asserted that the agency "wield[ed] authority unconstitutionally in all or a broad swath of its work." *Axon*, 598 U.S. at 189. The Court concluded that such "structural constitutional" challenges need not be channeled through an enforcement proceeding the agency allegedly lacked constitutional authority to conduct, and that they could instead be brought directly in district court. *Id.* at 190-93; *Free Enter.*, 561 U.S. at 489-90.

Here, in contrast, NAIJ is not challenging the existence of an administrative body, nor do immigration judges need to pick a dispute at random in order to invoke the procedures of the CSRA. To the contrary, the immigration judges that NAIJ represents have constitutional concerns about a specific personnel policy, including concerns that they face disciplinary action for violating the policy, and the CSRA provides them with clear administrative mechanisms to raise those concerns in the event they face such discipline.

28

Moreover, the CSRA framework provides substantial protections to federal employees who challenge disciplinary actions that allow federal employees to pursue constitutional challenges like the one at issue here without fear that doing so will be costly. If an immigration judge is disciplined or removed from his job as a result of the 2021 Policy, he can challenge that personnel action, and, if he were to prevail, he could be made whole through "reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6. It is of course true that some employees might hesitate to risk discipline if their challenge to a policy is unsuccessful. But that is a necessary consequence of Congress's choice to channel such challenges into administrative review of adverse employment actions, with judicial review available only after the administrative review.

**c.** In any event, NAIJ is wrong to suggest that the CSRA does not permit pre-enforcement administrative review of agency personnel policies. As this Court recognized in *Rydie*, the CSRA provides limited pathways for such review, including by petitioning the Special Counsel to review personnel policies that represent an allegedly unconstitutional "significant change" in the employee's "duties, responsibilities, or working conditions." 2022 WL 1153249, at *5 (citing 5 U.S.C. § 2302(a)(2)(A)(xii)). And this Court held in *Rydie*—as the district court did here— that the availability of this remedy under the CSRA precludes federal employees from filing preemptive challenges to personnel policies in district court. *Id.*

NAIJ dedicates a substantial portion of its brief (Br. 19-26) to arguing that immigration judges may not pursue this course of action because the 2021 Policy does

not represent a "significant change" in immigration judges' "duties, responsibilities, or working conditions." That argument cannot be squared with the allegations in NAIJ's complaint, which—as the district court recognized—broadly alleges that the challenged policy "affects how judges interact with their supervisors and the EOIR, governs what types of speaking or writing they may do within their official capacities, and enforces these restrictions through traditional workplace disciplinary measures." JA92.

In any event, NAIJ misses the critical point. By virtue of its role in the statutory scheme, the Special Counsel is uniquely positioned to analyze whether EOIR committed a prohibited personnel practice when it issued the 2021 Policy. And if a complaint were filed with the Special Counsel, the Special Counsel would necessarily have to address the question of whether the 2021 Policy constitutes a significant change in immigration judges' duties or working conditions. NAIJ cannot invoke speculation about how the Special Counsel *might* resolve that question as an excuse to file suit in district court. The decision to evade Congress's comprehensive statutory scheme cannot supply its own justification. *See Rydie*, 2022 WL 1153249, at *5 n.7 (holding that the court "need not" decide whether the plaintiffs' challenge to the COVID-19 vaccination policy "would fit the category of 'duties, responsibilities, or working conditions'" to conclude that the challenge was precluded by the CSRA); *Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) (holding that the CSRA precludes claims that arise "as a result of the employment relationship," "whether or

not the[] complained-of actions would fall under the CSRA's definition of prohibited employment practices").

Nor is it significant that some complaints filed with the Special Counsel may not receive judicial review. As the district court explained, by requiring the Special Counsel to investigate whether there is a "reasonable ground to believe that a prohibited personnel practice has occurred," 5 U.S.C. § 1214(b)(2)(B), Congress designed a scheme through which the Special Counsel "weeds out only frivolous complaints." JA102. And "[t]he absence of a provision for direct judicial review of prohibited personnel actions among the carefully structured remedial provisions of the CSRA is evidence of Congress' intent that no judicial review in district court be available" for claims the Special Counsel considers frivolous. *Pinar v. Dole*, 747 F.2d 899, 910 (4th Cir. 1984); *see also Fausto*, 484 U.S. at 455; *United States v. Erika, Inc.*, 456 U.S. 201, 208 (1982) ("In the context of the [Medicare] statute's precisely drawn provisions, this omission [of a provision for judicial review of certain claims] provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims."); *Krafsur v. Davenport*, 736 F.3d 1032, 1038-39 (6th Cir. 2013) (rejecting similar argument and explaining that, "[f]or the most part, the claims the Special Counsel keeps out do not belong in court anyway").

In support of its contrary argument (Br. 26-31), NAIJ again relies on the vacated Fifth Circuit decision in *Feds for Medical Freedom* to suggest that judicial review is not meaningful unless there is a "guarantee" of judicial review of all administrative

31

complaints.  Br. 26 (quoting *Feds for Med. Freedom*, 63 F.4th at 379).  Critically,

however, NAIJ's concern that judicial review *might* not be available if the Special

Counsel chooses not to petition the MSPB does not reflect the facts of this case.

NAIJ does not allege that any of its members have filed a complaint with the Special

Counsel.  Nor has NAIJ alleged that any immigration judge has been denied an

opportunity to bring its constitutional claims to the Federal Circuit after proceeding

through the CSRA's adjudicative structure.  That alone forecloses district court

jurisdiction.  *See, e.g.*, *Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) (per

curiam) ("The CSRA plainly precludes extrastatutory judicial review of constitutional

claims that are asserted before an employee has exhausted his remedies available

under the statute."); *Irizarry v. United States*, 427 F.3d 76, 77, 80 (1st Cir. 2005); *Ferry v.*

*Hayden*, 954 F.2d 658, 661 (11th Cir. 1992); *cf. Weaver v. U.S. Info. Agency*, 87 F.3d 1429,

1433 (D.C. Cir. 1996).

    **d.**  Finally, in various parts of its brief, NAIJ suggests (Br. 16, 24 n.3) that even

if the CSRA provides for meaningful judicial review of *some* constitutional claims, that

same review is not meaningful with respect to the pre-enforcement First Amendment

challenge it seeks to bring because immigration judges' speech will be continuously

chilled throughout the course of any administrative proceeding.  That argument

cannot be reconciled with controlling precedent.  As discussed, this Court and other

courts of appeals have repeatedly held that judicial review is meaningful so long as the

issue can be addressed by courts at the end of the administrative process, even if that

process would deprive a plaintiff of immediate relief from an ongoing injury. *See, e.g.,* *Thunder Basin*, 510 U.S. at 204; *Bennett*, 844 F.3d at 177-78; *Trump*, 929 F.3d at 753-54; *Secretary of the Air Force*, 716 F.3d at 635-38.

In support of its view that First Amendment challenges are somehow uniquely excepted from the CSRA's preclusive scope, NAIJ notes (Br. 16) that in *United States v. National Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995), the Supreme Court reached the merits of a First Amendment challenge without addressing whether that claim had to be channeled through the CSRA or the Federal Service Labor-Management Relations Statute. Critically, however, *NTEU* did not discuss subject-matter jurisdiction. Its silence on the matter is thus, at best, the sort of "drive-by jurisdictional ruling[]" that can have "no precedential effect." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)); *see also Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[W]e have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio."); *Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007) ("We are bound by holdings, not unwritten assumptions.").

For similar reasons, NAIJ's reliance (Br. 16) on outdated, out-of-circuit decisions that do not address the CSRA's jurisdictional limitations is misplaced. As in *NTEU*, two of the three decisions cited do not discuss the CSRA and thus provide no

precedential value on the relevant jurisdictional question. *Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995) (en banc); *Wolfe v. Barnhart*, 446 F.3d 1096 (10th Cir. 2006). The third cited decision, *Weaver v. U.S. Information Agency*, relied upon *NTEU* for the proposition that courts have "jurisdiction" over "simple pre-enforcement attack[s] on a regulation restricting employee speech." 87 F.3d at 1434. As discussed, *NTEU* contains no such holding. Moreover, all three decisions pre-date *Elgin*'s holding that the CSRA precludes facial constitutional challenges. Following *Elgin*, both the D.C. Circuit and Tenth Circuit have held that First Amendment and other constitutional claims are no less subject to preclusion than any other claim. *See Trump*, 929 F.3d at 753-54; *Payne*, 62 F.4th at 603-04; *Thompkins v. U.S. Dep't of Veterans Affairs*, 16 F.4th 733, 741-43 (10th Cir. 2021).

### 2. NAIJ's challenge is not wholly collateral to the CSRA

For substantially the same reasons, NAIJ's concerns are not "wholly collateral" to the statutory scheme. In arguing to the contrary, NAIJ repeats its view that the relief it seeks is different than that available under the CSRA because its members have not yet faced any discipline for violating the policy. Br. 31-33. But as discussed above, NAIJ's claim is the vehicle by which it seeks to vacate an agency personnel policy. According to its complaint, the policy imposes new and burdensome conditions on immigration judges' employment under threat of disciplinary sanctions. Thus, although NAIJ is not challenging discipline that has already occurred, the essence of its complaint is a preemptive challenge to such discipline, or at the very

least, a challenge to a significant change in immigration judges' duties, responsibilities, or working conditions. NAIJ's claim thus reflects a grievance with an aspect of immigration judges' employment which can be asserted through the CSRA's procedures and is therefore not wholly collateral to the statutory scheme. *See Rydie*, 2022 WL 1153249, at *7 (holding that pre-enforcement challenge to COVID-19 vaccination policy was not wholly collateral to the CSRA's review provisions).

### 3. NAIJ's claims fall within the MSPB's expertise

Finally, NAIJ erroneously contends that the "purely constitutional claims" it seeks to bring fall outside the MSPB's expertise. Br. 33. That argument fails for the same reasons as in *Elgin*, which expressly rejected an analogous argument that "constitutional claims are not the sort that Congress intended to channel through the MSPB because they are outside the MSPB's expertise." 567 U.S. at 22-23. As the Court explained, constitutional challenges often involve "many threshold questions" "unique to the employment context" to which the MSPB can apply its expertise. *Id.* at 22; *see also Rydie*, 2022 WL 1153249, at *8; *Fleming*, 718 F. App'x at 188 ("Congress clearly intended for the OSC to handle constitutional complaints like Fleming's."). The same is true here: if immigration judges proceeded through the CSRA framework, the MSPB could develop a factual record and shed light on any threshold questions that accompany the constitutional claim, and proceeding through that process could potentially moot NAIJ's claim.

In short, as the district court recognized, it is fairly discernible from the statutory scheme that Congress intended to preclude district-court jurisdiction over NAIJ's claim. The CSRA provides a comprehensive remedial scheme governing claims arising out of federal employment that was designed to ensure that federal workplaces across the country follow a uniform body of law developed by the Federal Circuit. *Elgin*, 567 U.S. at 6, 14. And the CSRA provides for meaningful judicial review of nonfrivolous constitutional claims raised in the context of the administrative review procedures that Congress prescribed. NAIJ cannot circumvent Congress's design and seek review of claims that could be brought through the CSRA's procedures in district court merely by recasting those claims as generalized, pre-enforcement constitutional challenges.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

JESSICA D. ABER
*United States Attorney*

MICHAEL S. RAAB
*/S/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

March 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,801 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.


*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 1212 (excerpts) ........................................................... A1

5 U.S.C. § 1214 (excerpts) ........................................................... A2

5 U.S.C. § 2301 (excerpts) ........................................................... A3

5 U.S.C. § 2302 (excerpts) ........................................................... A5

5 U.S.C. § 7701 ........................................................................... A7

**5 U.S.C. § 1212 (excerpts)**

**§ 1212. Powers and functions of the Office of the Special Counsel**

**(a)** The Office of Special Counsel shall--

> **(1)** in accordance with section 1214(a) and other applicable provisions of this subchapter, protect employees, former employees, and applicants for employment from prohibited personnel practices;

> **(2)** receive and investigate allegations of prohibited personnel practices, and, where appropriate--

>> **(A)** bring petitions for stays, and petitions for corrective action, under section 1214; and

>> **(B)** file a complaint or make recommendations for disciplinary action under section 1215;

> **(3)** receive, review, and, where appropriate, forward to the Attorney General or an agency head under section 1213, disclosures of violations of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

> **(4)** review rules and regulations issued by the Director of the Office of Personnel Management in carrying out functions under section 1103 and, where the Special Counsel finds that any such rule or regulation would, on its face or as implemented, require the commission of a prohibited personnel practice, file a written complaint with the Board; and

> **(5)** investigate and, where appropriate, bring actions concerning allegations of violations of other laws within the jurisdiction of the Office of Special Counsel (as referred to in section 1216).

<div align="center">* * *</div>

A1

**5 U.S.C. § 1214 (excerpts)**

**§ 1214. Investigation of prohibited personnel practices; corrective action**

**(a)(1)(A)** The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

\* \* \*

**(b)(2)(A)(i)** Except as provided under clause (ii), no later than 240 days after the date of receiving an allegation of a prohibited personnel practice under paragraph (1), the Special Counsel shall make a determination whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

\* \* \*

**(B)** If, in connection with any investigation, the Special Counsel determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action, the Special Counsel shall report the determination together with any findings or recommendations to the Board, the agency involved and to the Office of Personnel Management, and may report such determination, findings and recommendations to the President. The Special Counsel may include in the report recommendations for corrective action to be taken.

**(C)** If, after a reasonable period of time, the agency does not act to correct the prohibited personnel practice, the Special Counsel may petition the Board for corrective action.

\* \* \*

**(4)(A)** The Board shall order such corrective action as the Board considers appropriate, if the Board determines that the Special Counsel has demonstrated that a prohibited personnel practice, other than one described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), has occurred, exists, or is to be taken.

\* \* \*

**(c)(1)** Judicial review of any final order or decision of the Board under this section may be obtained by any employee, former employee, or applicant for employment adversely affected by such order or decision.

**(2)** A petition for review under this subsection shall be filed with such court, and within such time, as provided for under section 7703(b).

A2

**5 U.S.C. § 2301 (excerpts)**

**§ 2301. Merit system principles**

**(a)** This section shall apply to--

    **(1)** an Executive agency; and

    **(2)** the Government Publishing Office.

**(b)** Federal personnel management should be implemented consistent with the following merit system principles:

    **(1)** Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

    **(2)** All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

    **(3)** Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance.

    **(4)** All employees should maintain high standards of integrity, conduct, and concern for the public interest.

    **(5)** The Federal work force should be used efficiently and effectively.

    **(6)** Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

    **(7)** Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

    **(8)** Employees should be--

        **(A)** protected against arbitrary action, personal favoritism, or coercion for partisan political purposes, and

A3

**(B)** prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.

**(9)** Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences--

**(A)** a violation of any law, rule, or regulation, or

**(B)** mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

**(c)** In administering the provisions of this chapter--

**(1)** with respect to any agency (as defined in section 2302(a)(2)(C) of this title), the President shall, pursuant to the authority otherwise available under this title, take any action, including the issuance of rules, regulations, or directives; and

**(2)** with respect to any entity in the executive branch which is not such an agency or part of such an agency, the head of such entity shall, pursuant to authority otherwise available, take any action, including the issuance of rules, regulations, or directives;

which is consistent with the provisions of this title and which the President or the head, as the case may be, determines is necessary to ensure that personnel management is based on and embodies the merit system principles.

**5 U.S.C. § 2302 (excerpts)**

**§ 2302. Prohibited personnel practices**

**(a)(1)** For the purpose of this title, "prohibited personnel practice" means any action described in subsection (b).

    **(2)** For the purpose of this section--

        **(A)** "personnel action" means--

            **(i)** an appointment;

            **(ii)** a promotion;

            **(iii)** an action under chapter 75 of this title or other disciplinary or corrective action;

            **(iv)** a detail, transfer, or reassignment;

            **(v)** a reinstatement;

            **(vi)** a restoration;

            **(vii)** a reemployment;

            **(viii)** a performance evaluation under chapter 43 of this title or under title 38;

            **(ix)** a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;

            **(x)** a decision to order psychiatric testing or examination;

            **(xi)** the implementation or enforcement of any nondisclosure policy, form, or agreement; and

            **(xii)** any other significant change in duties, responsibilities, or working conditions;

with respect to an employee in, or applicant for, a covered position in an agency, and in the case of an alleged prohibited personnel practice described in subsection (b)(8), an employee or applicant for employment in a Government corporation as defined in section 9101 of title 31;

<div align="center">* * *</div>

**(b)** Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

<div align="center">A5</div>

\* \* \*

**(12)** take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title;

\* \* \*

**5 U.S.C. § 7703**

**§ 7703. Judicial review of decisions of the Merit Systems Protection Board**

**(a)(1)** Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.

> **(2)** The Board shall be named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.

**(b)(1)(A)** Except as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

> **(B)** A petition to review a final order or final decision of the Board that raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D) shall be filed in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

**(2)** Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

**(c)** In any case filed in the United States Court of Appeals for the Federal Circuit, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be--

> **(1)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(2)** obtained without procedures required by law, rule, or regulation having been followed; or

**(3)** unsupported by substantial evidence;

except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

**(d)(1)** Except as provided under paragraph (2), this paragraph shall apply to any review obtained by the Director of the Office of Personnel Management. The Director may obtain review of any final order or decision of the Board by filing, within 60 days after the Board issues notice of the final order or decision of the Board, a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in the discretion of the Director, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive. If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied. In addition to the named respondent, the Board and all other parties to the proceedings before the Board shall have the right to appear in the proceeding before the Court of Appeals. The granting of the petition for judicial review shall be at the discretion of the Court of Appeals.

**(2)** This paragraph shall apply to any review obtained by the Director of the Office of Personnel Management that raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D). The Director may obtain review of any final order or decision of the Board by filing, within 60 days after the Board issues notice of the final order or decision of the Board, a petition for judicial review in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction if the Director determines, in the discretion of the Director, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive. If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied. In addition to the named respondent, the Board and all other parties to the proceedings before the Board shall have the right to appear in the proceeding

A8

before the court of appeals. The granting of the petition for judicial review shall be at the discretion of the court of appeals.