**23-2235**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers,

*Plaintiff–Appellant,*

v.

DAVID L. NEAL, in his official capacity as Director of the Executive Office for Immigration Review,

*Defendant–Appellee.*

On appeal from the United States District Court for the
Eastern District of Virginia — No. 1:20-cv-00731-LMB-JFA (Brinkema, L.)

## REPLY BRIEF FOR APPELLANT

Ramya Krishnan
Xiangnong Wang
Alexia Ramirez
Alex Abdo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100
vmg@robinhoodesq.com

*Counsel for Plaintiff–Appellant*

**Table of Contents**

Table of Authorities ................................................................... ii

Introduction ........................................................................... 1

I.　The Civil Service Reform Act does not withdraw district court
　　jurisdiction over NAIJ's prior restraint claims. ......................... 3

　　A.　The CSRA does not withdraw jurisdiction because NAIJ
　　　　does not challenge a covered employment action. ......................... 4

　　　　1.　The CSRA does not withdraw jurisdiction unless a
　　　　　　plaintiff challenges a covered employment action. ............. 4

　　　　2.　NAIJ does not challenge a covered employment
　　　　　　action. ....................................................... 8

　　B.　The *Thunder Basin* factors confirm that the CSRA does not
　　　　withdraw district court jurisdiction over NAIJ's claims. .............. 16

　　　　1.　The CSRA does not provide meaningful judicial
　　　　　　review of NAIJ's claims. ..................................... 16

　　　　2.　NAIJ's claims are wholly collateral to the CSRA and
　　　　　　outside the expertise of the MSPB. ........................... 24

Conclusion ........................................................................... 25

## Table of Authorities

**Cases**

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ................................................. 13, 25

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) ..................................... passim

*Ayes v. U.S. Dep't of Veterans Affs.*, 473 F.3d 104 (4th Cir. 2006) ....................... 9

*Begay v. United States*, 553 U.S. 137 (2008) ........................................... 10

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) ................................................. 23, 24

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ............................................................... 7

*Bosco v. United States*, 931 F.2d 879 (Fed. Cir. 1991), *adhered to on reh'g*, 976 F.2d 710 (Fed. Cir. 1992)................................................................ 21

*Bush v. Lucas*, 462 U.S. 367 (1983) .................................................... 6, 7

*Carson v. Merit Sys. Prot. Bd.*, No. 20-3459, 2021 WL 6881209 (6th Cir. May 17, 2021) .................................................................. 11

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) .................... 18

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ........................................... passim

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................. 24

*Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023) ..................... passim

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)............................................................................... 1, 18, 23

*Freedman v. Maryland*, 380 U.S. 51 (1965)............................................. 18

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004) ........................... 9

*Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000) ........................................ 7

ii

*Lindke v. Freed*, No. 22-611, 2024 WL 1120880 (U.S. Mar. 15, 2024) ............... 15

*Manivannan v. Dep't of Energy*, 42 F.4th 163 (3d. Cir. 2022) ..................... 5, 7, 12

*Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473 (D.C. Cir. 2001), *modified on denial for reh'g*, 270 F.3d 957 (D.C. Cir. 2001) ................................................................................................. 25

*N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126 (D.C. Cir. 2015) ............... 13

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) .................................................. 24

*Payne v. Biden*, 62 F.4th 598 (D.C. Cir. 2023), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023) ...................................................... 13, 14

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ........................................ 13

*Rydie v. Biden*, No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ........................................................................................... 8, 14, 25

*Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995) ........................................................ 3

*Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984) ............................................................................................... 17, 18

*Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710 (6th Cir. 2013) ...................... 25

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ................................. passim

*United States v. Fausto*, 484 U.S. 439 (1988) ...................................................... 20

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995) ...................... 3

*Washlefske v. Winston*, 234 F.3d 179 (4th Cir. 2000) .......................................... 13

*Weaver v. U.S. Info. Agency*, 87 F.3d 1429 (1996) ................................. 3, 11, 13, 16

*Webster v. Doe*, 486 U.S. 592 (1988) ..................................................................... 2

*Wolfe v. Barnhart*, 446 F.3d 1096 (10th Cir. 2006) .............................................. 3

*Yates v. United States*, 574 U.S. 528 (2015) ........................................................ 10

**Statutes**

28 U.S.C. § 1331 ................................................................................ 3

5 U.S.C. § 1214 ........................................................................... 21, 22

5 U.S.C. § 2302 ............................................................................. 6, 9

5 U.S.C. § 2303 ................................................................................ 6

5 U.S.C. § 7503 ................................................................................ 6

5 U.S.C. § 7513 ................................................................................ 6

**Other Authorities**

Letter from H.R. Comm. on the Judiciary, 181st Cong., to David Neal, EOIR Director (Mar. 18, 2024), https://perma.cc/4KF7-Z4HF ........................ 3

**Introduction**

The government's argument boils down to this—the only way federal employees can challenge a sweeping prior restraint on core political speech is to deliberately violate that restraint and risk being punished or fired. On its interpretation, the Biden administration could issue a regulation requiring all federal employees to declare their fealty and denounce the administration's political rivals, and the only judicial challenge that could be made would be by an employee who violated the regulation, was punished, and endured likely years of administrative review before being allowed into federal court. This cannot be the law, and it isn't.

The Supreme Court does not require plaintiffs to "bet the farm" to obtain judicial review. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010). Yet that is precisely what the government would have NAIJ's members do. To have any assurance of judicial review under the Civil Service Reform Act ("CSRA"), an immigration judge would have to violate the Policy to such an extent that they provoked a suspension or removal. Forcing NAIJ's members to risk such a severe sanction is not a "'meaningful' avenue of relief." *Id.* at 491 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)). It is especially not meaningful because the policy NAIJ challenges imposes a prior restraint, the very existence of which causes "a here-and-now injury" that cannot be undone by any post-proceeding

relief the Federal Circuit could provide. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (quoting *Seila Law LLC v. CFPB*, 140 S.Ct. 2183, 2196 (2020)).

The government's startling riposte—that if the CSRA does not provide for judicial review of NAIJ's constitutional claims, then NAIJ's members are simply out of luck—also runs aground on Supreme Court precedent. As the Court has oft remarked, a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (internal quotation marks and citation omitted). Thus, in *Thunder Basin*, the Court held that the failure of a statutory scheme to guarantee "meaningful judicial review" generally triggers a presumption against jurisdictional preclusion. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994). And in *Elgin*, the Court held that the CSRA withdraws district court jurisdiction over a claim only if that claim challenges a "covered employment action." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012).

As NAIJ's opening brief explained at length, NAIJ does not challenge a covered action. Pl. Br. 19–26. But the government's theory would deny any judicial review of NAIJ's constitutional claims, requiring this Court to address the "serious constitutional question" that the Supreme Court has studiously avoided. The far better course is for the Court to reject that invitation and hold that NAIJ's claims are not channeled into an administrative dead-end, but rather may be brought in federal

2

district court, as with the claims in *United States v. National Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995), *Weaver v. U.S. Information Agency*, 87 F.3d 1429 (1996), *Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995), and *Wolfe v. Barnhart*, 446 F.3d 1096 (10th Cir. 2006).

For these reasons and those that follow, the Court should reverse the district court's decision granting Defendant's motion to dismiss and remand for further proceedings.[1]

## I.   The Civil Service Reform Act does not withdraw district court jurisdiction over NAIJ's prior restraint claims.

Congress gave federal district courts jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331. The government does not argue that the CSRA expressly strips § 1331 jurisdiction over NAIJ's claims, but rather that it impliedly does so. The government is wrong. As NAIJ's opening brief explained, to determine whether it is "fairly discernible" from

---

[1] By directive issued on February 15, 2024, the Executive Office for Immigration Review ("EOIR") informed NAIJ that the Policy applies even to immigration judges who wish to speak in their capacity as officers of NAIJ, prompting congressional concern that the administration "seeks to stifle the free speech of immigration judges at a time when Congress, and this Committee in particular, is conducting robust oversight of the border crisis and how the nation's immigration courts are being used to carry out President Biden's [immigration] policies." Letter from H.R. Comm. on the Judiciary, 181st Cong., to David Neal, EOIR Director (Mar. 18, 2024), https://perma.cc/4KF7-Z4HF. Although the agency later clarified that the Policy is not meant to restrict judges' right to make disclosures protected by whistleblowing statutes, the general "gag order" remains in place.

the CSRA that Congress sought to withdraw the jurisdiction that § 1331 expressly confers, this Court must "examine" the statute's "text, structure, and purpose." *Elgin*, 567 U.S. at 10–11; Pl. Br. 19. Those indicia establish that Congress did not seek to eliminate § 1331 jurisdiction for all "claims arising out of federal employment," as the government suggests, Opp. Br. 16, but rather only for employment actions that are covered by the statute. Because NAIJ does not challenge a covered employment action, the CSRA leaves § 1331 jurisdiction over its claims intact.

The *Thunder Basin* factors reinforce this conclusion. In *Thunder Basin*, the Court identified three considerations that are meant to assist in ascertaining congressional intent: (1) whether a finding of preclusion "could foreclose all meaningful judicial review"; (2) whether the suit is "wholly collateral to [the] statute's review provisions"; and (3) whether the claims are "outside the agency's expertise." 510 U.S. at 212–13 (internal quotation marks omitted). Here, all three factors point in one direction—that Congress intended for the district court to remain open to claims such as NAIJ's.

### A. The CSRA does not withdraw jurisdiction because NAIJ does not challenge a covered employment action.

#### 1. The CSRA does not withdraw jurisdiction unless a plaintiff challenges a covered employment action.

The government argues that the CSRA strips district courts of jurisdiction over *all* claims filed by federal employees arising out of their employment. Opp. Br.

17. This radical re-interpretation of the CSRA is inconsistent with Supreme Court precedent as well as the statute's "text, structure, and purpose." *Elgin*, 567 U.S. at 10. As the Third Circuit observed in rejecting precisely this argument, the statute "does not sweep so wide." *Manivannan v. Dep't of Energy*, 42 F.4th 163, 170 (3d. Cir. 2022). It eliminates district court jurisdiction only over claims challenging a covered employment action.

The Supreme Court has been clear on this point. In *Elgin*, the Court held that the CSRA withdrew jurisdiction over the plaintiffs' constitutional claims where those claims were "the vehicle" for reversing their terminations—an action unquestionably covered by the CSRA. 567 U.S. at 22. But the Court took pains to limit its construction of the statute's jurisdictional reach to *covered* actions. Thus, the Court recognized that whether the CSRA withdraws jurisdiction turns on "the type of the employee and the challenged employment action." *Id.* at 15. "[A] covered employee [may not] challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional." *Id.* at 14. But if the employee challenges a non-covered action, neither the Merit Systems Protection Board ("MSPB") nor Federal Circuit would have jurisdiction, and the employee is free to file in district court. *See id.* at 17–18.

The Court also recognized the CSRA's limited scope almost three decades earlier, in *Bush v. Lucas*, 462 U.S. 367 (1983). The Court observed there that "[n]ot all personnel decisions are covered by this system," and that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings would not be defined as 'personnel actions' within the scheme." *Id.* at 38 n.28. Consistent with this guidance, lower courts have taken care to distinguish between covered and non-covered actions and have consistently held that the CSRA withdraws jurisdiction only over challenges to the former. *See, e.g.*, *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 372–73 (5th Cir. 2023) (collecting cases from Third, Fifth, Seventh, and Ninth Circuits).

The CSRA's text, structure, and purpose support this reading. The scheme provides for administrative review of only certain employment actions. As relevant here, Chapter 23 covers "prohibited personnel practices," a list of fourteen acts that supervisory employees may not take against covered employees, including any "personnel action" in violation of the "merit system principles." 5 U.S.C. § 2302(b)(12). "Personnel action" is defined, in turn, to include twelve employment actions taken "with respect to an employee in, or applicant for, a covered position." *Id.* § 2303(a)(2)(A). Chapter 75 separately covers "adverse actions"—removals, suspensions, furloughs, and reductions in pay and grade taken to "promote the efficiency of the service." 5 U.S.C. §§ 7503, 7513. If Congress had intended the

CSRA to cover all claims arising from federal employment, none of this would have been necessary. *See Feds for Med. Freedom*, 63 F.4th at 385 ("Congress certainly could pass a statute that says, 'federal employers are suable under the CSRA and only under the CSRA.' But that's not what Congress said."); *see also Manivannan*, 42 F.4th at 171. This Court must give effect to Congress' unambiguously expressed intent.

The government urges the Court to reject this uniform interpretation of the CSRA based on *Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000), Opp. Br. 13, but that case cannot bear the weight the government puts on it. In *Hall*, the question was whether to extend to federal employees the judicially created *Bivens* damages remedy for constitutional violations arising from federal employment. Because the Supreme Court is reluctant to recognize implied causes of action, it has extended *Bivens* to new contexts only where there are not "special factors counseling hesitation." *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 396–97 (1971). Thus, in *Bush*, the Court refused to extend *Bivens* to the federal employment context because the CSRA's detailed remedial scheme counselled against doing so. *See* 462 U.S. at 388. *Hall* was a straightforward application of *Bush*'s holding. *See Manivannan*, 42 F.4th at 171 (distinguishing a similar case on the same basis). Its analysis has no relevance to the very different

context of implied jurisdiction stripping—if anything, it demonstrates the Court's general reluctance to rely on doctrines of implication.[2]

### 2.    NAIJ does not challenge a covered employment action.

NAIJ's opening brief explained in detail why text, structure, and precedent all show that the Policy is not an action covered by the CSRA. Pl. Br. 19–26. The government largely ignores these arguments, instead repeating its earlier assertion that the CSRA provides NAIJ's members with "two potential avenues" to challenge the Policy. Opp. Br. 19–20. As NAIJ has already explained, neither avenue is available.

First, the government argues that Chapter 75 of the CSRA gives any judge who faces removal or suspension for violating the Policy the right to challenge that discipline before the MSPB, subject to review by the Federal Circuit. Opp. Br. 20. But none of NAIJ's members faces removal or suspension, because none is willing to put their career at risk—to "bet the farm"—by violating the Policy. This distinguishes *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022), where the plaintiffs faced termination for violating the federal vaccine mandate. Because termination of the plaintiffs had already been "proposed," the Court held that Chapter 75 entitled them to challenge it. *Rydie*, 2022 WL 1153249

---

[2] Although the Fourth Circuit also held that the CSRA precluded jurisdiction over a claim raised under 42 U.S.C. § 1985(1), it did so noting that the challenged "personnel decisions" were covered by the scheme. *Hall*, 235 F.3d at 206 n.2.

at *6 (quoting 5 U.S.C. § 7513(b)). Here, no adverse action has been "proposed" against NAIJ's members, and nothing in *Rydie* suggests that NAIJ could seek review of an entirely speculative adverse action. *See* Op. 27; *Feds for Med. Freedom*, 63 F.4th at 377–78 ("[W]e do not make jurisdictional determinations based on hypothetical future facts."); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) ("[J]urisdiction . . . depends upon the state of things at the time of the action brought." (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824))).

Next, the government argues that Chapter 23 entitles judges to file a complaint with the Office of Special Counsel ("OSC") challenging the Policy because it represents an "unconstitutional change[] in their working conditions." Opp. Br. 20. This argument rests on a misinterpretation of the CSRA's definition of "personnel action." The statute defines that term with an eleven-item list of individual personnel actions, followed by a residual clause covering "any other significant change in duties, responsibilities, and working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The government ignores the eleven items that precede the residual clause, however, and then interprets that clause to be all-encompassing. Opp. Br. 30. That is not how the Court reads statutes. *Ayes v. U.S. Dep't of Veterans Affs.*, 473 F.3d 104, 108 (4th Cir. 2006) ("[W]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984))).

Applying traditional tools of statutory interpretation, it is clear that the residual clause applies only to routine employment actions taken against individual employees—like the preceding eleven items in the list—not broad prior restraints on private speech of the kind the Policy imposes here. *See* Pl. Br. 19–26. The government's alternative interpretation would render those preceding eleven items meaningless. The Supreme Court has repeatedly rejected this approach to statutory construction. For example, in *Begay v. United States*, the Court applied the principle of *ejusdem generis* to construe the statutory phrase "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," and it held that the enumeration of specific crimes meant that the residual clause covered "only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" 553 U.S. 137, 139–140, 142 (2008). Had Congress intended the words following "otherwise involves" to be "all encompassing," the Court observed, "it is hard to see why it would have needed to include the examples at all." *Id.* at 142; *see also Yates v. United States*, 574 U.S. 528, 546 (2015) (similar).

Reading the phrase "any other significant change . . . in working conditions" in context yields a similar result. Had Congress wanted the phrase to cover *any* significant change to *any* circumstances under which employees perform their jobs, it would have had no reason to refer specifically to "an appointment," "a promotion,"

10

and the other similarly "discrete" actions earlier in the list of actions that qualify as "personnel action[s]." *See Feds for Med. Freedom*, 63 F.4th at 371, 375. It would also make little structural sense to interpret the residual clause as all-encompassing; Congress delegated to the OSC unreviewable discretion to address "personnel action[s]" on the theory that such actions are relatively "trivial." *See Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996). A policy imposing a broad prior restraint on speech "can hardly be characterized as 'so minor in nature.'" Pl. Br. 23 (quoting *Pinar v. Dole*, 747 F.2d 899, 912 (4th Cir. 1984)). The better reading is that Congress meant to cover only actions against specific employees that affect their "day-to-day duties and responsibilities" or "the physical conditions" under which they labor—not any and every employment policy, no matter how far-reaching or serious. *Carson v. Merit Sys. Prot. Bd.*, No. 20-3459, 2021 WL 6881209, at *3 (6th Cir. May 17, 2021).

The weight of precedent supports this interpretation. As NAIJ's opening brief explained, a long line of cases has allowed employees to challenge employee speech policies directly in district court, so long as they do not target any specific sanction for non-compliance. Pl. Br. 2, 24–25. The Fifth Circuit's recent en banc decision in *Feds for Medical Freedom* recognized a similar distinction, holding that the CSRA did not withdraw jurisdiction over a pre-enforcement challenge to the federal

vaccine mandate where that challenge was not an effort to reverse disciplinary action that had already been threatened or taken. 63 F.4th at 378.

The government's attempts to diminish this precedent miss their mark.

First, the government argues that the distinction endorsed by these cases cannot be squared with *Elgin*. Opp. Br. 14. But contrary to the government's assertion, *Elgin* did not hold that *all* facial constitutional challenges by federal employees are channeled by the CSRA. The plaintiffs there had been fired for violating the Military Service Selective Act and sought to challenge the statute in district court on constitutional grounds. *Elgin*, 567 U.S. at 6–7. Although the plaintiffs did not expressly attack their removal, the Court saw through their artful pleading, finding that their constitutional claims were merely an attempt to do just that. *Id.* at 22; *see also Manivannan*, 42 F.4th at 170. That is not this case. NAIJ's members do not challenge removal or any other action covered by the CSRA. They challenge the Policy itself, because the Policy itself imposes a constitutional harm irrespective of whether NAIJ's members ever violate it. *See infra* pp. 17–18, 23–24 (explaining that the Policy itself causes a "here-and-now" injury by chilling constitutionally protected speech).

Second, the government tries to characterize the cases NAIJ relies on as non-precedential, unsound, or inapposite, but again, its attacks misfire. In describing *NTEU* as a "drive-by jurisdictional ruling" that can have "no precedential effect,"

Opp. Br. 33, the government effectively argues that one of the Supreme Court's seminal employee speech cases was wrongly decided. But the Court's "willingness to exercise jurisdiction without comment" merely underscores its conviction that it had jurisdiction. *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1131 (D.C. Cir. 2015); *accord Washlefske v. Winston*, 234 F.3d 179, 183 (4th Cir. 2000).[3] The government next tries to cast doubt on *Weaver*, *Wolfe*, and *Sanjour*, but those cases merely emphasize that lower courts have repeatedly come to the same conclusion that the Supreme Court has. Indeed, in *Weaver*, the D.C. Circuit cited *NTEU* in holding that the CSRA did not withdraw jurisdiction over "a simple pre-enforcement attack" on an employee speech regulation where it "st[ood] independently" of any sanction for non-compliance. 87 F.3d at 1434.

The government's argument that *Feds for Medical Freedom* is "substantively flawed" fares no better. Opp. Br. 24. The government does not explain where the Fifth Circuit's careful analysis of the CSRA went wrong, merely asserting that the court's decision conflicts with *Rydie* and *Payne v. Biden*, 62 F.4th 598, 603–04 (D.C. Cir. 2023), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023). But the decision does not so conflict. As NAIJ has already explained, *Rydie* involved

---

[3] The cases the government relies on are not on point. The Court in those cases was describing the kind of "unrefined disposition[]" that fails to appropriately distinguish between dismissal for lack of subject matter jurisdiction and failure to state a claim. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010).

plaintiffs against whom removal had already been "proposed." *See supra* pp. 8–9. Because removal had been proposed, the plaintiff could challenge it before the MSPB. *Rydie*, 2022 WL 1153249, at *6 (citing 5 U.S.C. § 7513). The plaintiff in *Payne* was similarly situated. 62 F.4th at 605 ("Mr. Payne argues that the government 'threaten[s]' disciplinary action."). Although the court there also held that the plaintiff had the option of filing a complaint before the OSC, it did so on the ground that he "face[d]" discipline "for his continued non-compliance." *Id.* This case is different.[4]

The government's attempts to distinguish *Feds for Medical Freedom* also fail. The government argues that the Fifth Circuit's holding that the vaccine mandate did not constitute a "personnel action" turned in large part on its view that the mandate involved "medical decisions made . . . outside the federal workplace." Opp. Br. 25 (quoting *Feds for Med. Freedom*, 63 F.4th at 376). That reasoning, the government contends, does not apply here, "where the personnel policy in question directly concerns the subject matter of immigration judges' employment." *Id.* But as the Fifth Circuit itself explained, its holding did not depend on the location of the mandated medical decisions. *Feds for Med. Freedom*, 63 F.4th at 384 (noting that this aspect

---

[4] *Rydie* also expressly reserved the question of whether the plaintiffs' challenge "would fit the category of 'duties, responsibilities, or working conditions' under § 2302(a)(2)(A)(xii)." 2022 WL 1153249, at *5 n.7.

of the mandate may have "bolster[ed]" its conclusion, "[b]ut it [was] not necessary"). In any event, the Policy's categorical prohibition *does* apply "outside the federal workplace," because it prohibits judges from discussing immigration or the agency when they are off the job. As the Supreme Court reaffirmed just this term, the First Amendment protects an employee's speech even on matters related to their employment, so long as it is not "itself ordinarily within the scope of [the] employee's duties." *Lindke v. Freed*, No. 22-611, 2024 WL 1120880, at *6 (U.S. Mar. 15, 2024) (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)).

Finally, the government argues that NAIJ's construction of the CSRA would create "a gaping . . . loophole" in the statutory scheme, "seriously undermin[ing] the [statute's] 'objective of creating an integrated scheme of review.'" Opp. Br. 25–26 (quoting *Elgin*, 567 U.S. at 14). But as the Fifth Circuit recognized in *Feds for Medical Freedom*, the CSRA's purpose is to integrate the review system for federal employees' challenges to personnel actions that are *covered* by the statute. 63 F.4th at 374. "It does nothing to promote that purpose to interpret the CSRA as stripping § 1331 jurisdiction over disputes *beyond* CSRA-covered personnel actions. If anything, it would disserve the CSRA's purposes to rewrite it." *Id.* Indeed, it is the government's interpretation of the CSRA that would subvert the statute's design, because it would permit every federal employee to challenge every single

15

employment policy in administrative proceedings without having suffered a true "personnel action."

Moreover, adopting NAIJ's construction would not open district courts to all pre-enforcement challenges to federal employment policies. An employee could challenge a policy directly in district court only if the challenge "st[ood] independently" of any covered personnel action. *Weaver*, 87 F.3d at 1434. Even then, "the eye of the federal employee's needle [would be] narrow." *Feds for Med. Freedom*, 63 F.4th at 386. The employee would still have to satisfy Article III standing and ripeness requirements. *Id.* at 386–87. In many cases, plaintiffs will not have suffered any injury distinct from a covered personnel action, and so they will not be able to make this showing. This is the rare case where the "very existence" of the Policy causes a "here-and-now injury," *Axon. Enter.*, 598 U.S. at 189, 192, because it imposes a broad prior restraint on speech that causes constitutional harm whether or not the policy is ever enforced against NAIJ's members, *see infra* pp. 17–18, 23–24.

### B.    The *Thunder Basin* factors confirm that the CSRA does not withdraw district court jurisdiction over NAIJ's claims.

#### 1.    The CSRA does not provide meaningful judicial review of NAIJ's claims.

The first and most important *Thunder Basin* factor weighs in favor of district court jurisdiction because a finding of preclusion "could foreclose all meaningful

judicial review" of NAIJ's claims. 510 U.S. at 212–13. As explained above, NAIJ cannot challenge the Policy through the CSRA, and so it cannot obtain *any* judicial review—much less meaningful judicial review—of its constitutional claims through the statutory scheme. But even if it could challenge the Policy through the CSRA, it could not obtain *meaningful* judicial review because judicial review would turn on the unreviewable discretion of the OSC, which may decide not to bring NAIJ's claims to the MSPB, Pl. Br. 26–29; even then, any judicial review NAIJ could obtain through the scheme would come too late to remedy the ongoing and serious First Amendment injury caused by EOIR's prior restraint, Pl. Br. 29–31.

Perhaps recognizing the force of those arguments, the government argues that the CSRA provides for meaningful judicial review of NAIJ's claims, even if those claims can be raised only after an immigration judge has been disciplined. Opp. Br. 26. But this misunderstands the nature of NAIJ's challenge, which is not "prophylactic" or "preventative," Opp. Br. 27, but rather seeks to remedy a "here-and-now injury," *Axon Enter.*, 598 U.S. at 192 (cleaned up); *see infra* pp. 23–24. The Supreme Court has never held that a person must violate a prior restraint in order to challenge it, and for good reason: a prior restraint "creates a threat of censorship that *by its very existence* chills free speech." *Sec'y of State of Md. V. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 964 n.12 (1984) (emphasis added). Thus, the Supreme Court has long permitted individuals to challenge prior restraints without

first risking punishment—and, in the case of licensing schemes, without even submitting to the scheme. *Id.* at 956; *see also Freedman v. Maryland*, 380 U.S. 51, 56 (1965); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988).

The government's suggestion that NAIJ's members should have to subject themselves to discipline to obtain Article III review also conflicts with the Court's decision in *Free Enterprise Fund*, which held that plaintiffs should not have to "bet the farm" merely to get into federal court. *See* 561 U.S. at 490. As NAIJ's opening brief explained, any immigration judge who seeks a guarantee of judicial review would have to violate the Policy to such an extent that they provoked removal or other serious "adverse action." Pl. Br. 31 n.5. This is the very definition of betting the farm. The government's only answer is that the plaintiff in *Free Enterprise Fund* raised different claims, but no part of the Court's reasoning in that case purported to limit its holding to "'structural constitutional' challenges." *Cf.* Opp. Br. 28. Here, as there, the government proposes that the plaintiff "*incur* a sanction" merely to access federal court, all the while facing "severe punishment should [their] challenge fail." 561 U.S. at 490. *Free Enterprise Fund* is clear that this is not a meaningful avenue of relief. *Axon Enter.*, 598 U.S. at 191.

The government next argues that, if the CSRA in fact forecloses meaningful judicial review of NAIJ's claims, that is "deliberate," and this Court must give this choice effect by shutting the courthouse doors. Opp. Br. 15. But the idea that

Congress can cut off judicial review of constitutional claims by mere *implication* runs into a wall of Supreme Court precedent. As already explained, the Court has repeatedly cautioned that a "'serious constitutional question' [] would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." *Thunder Basin*, 510 U.S. at 215 n.20 (quoting *Webster v. Doe,* 486 U.S. 592, 603 (1988)); *Elgin*, 567 U.S. at 10. It is precisely for this reason that the Court considers the availability of meaningful judicial review in assessing whether a statutory scheme impliedly withdraws district court jurisdiction over a plaintiff's claims. *See Axon Enter.*, 598 U.S. at 186 ("The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review.").

As the Court has been careful to note, there is a distinction between a statutory scheme that would "foreclose all judicial review of [a] constitutional claim[]" and one that "simply channels judicial review of a constitutional claim to a particular court." *Elgin*, 567 U.S. at 9–10; *Thunder Basin*, 510 U.S. at 207 (establishing framework for "cases involving delayed judicial review"). Where a statutory scheme does the latter, the test is whether it is "fairly discernible" from the scheme that Congress intended to withdraw district court jurisdiction over the plaintiff's claims. *Elgin*, 567 U.S. at 10. Where the scheme does the former, however*, Webster*'s "heightened showing" is required: Congress must *clearly* express an intent to

foreclose review of such claims. *Id.* at 9. The government makes no attempt to meet this standard—nor could it.

The government's reliance on *Elgin* and *United States v. Fausto*, 484 U.S. 439 (1988), is misplaced. *See* Opp. Br. 22–23, 26–27. As already explained, *Elgin* involved a challenge by employees to their removal—a covered employment action. *See supra* p. 12. Likewise, *Fausto* involved a challenge to a suspension—another covered action—albeit by a non-preference member carved out from the protections of Chapter 75. 484 U.S. at 441. Although Fausto's status as a non-preference member meant that he could not seek review under the CSRA's remedial provisions, the Court held that the statute precluded him from seeking review under the Back Pay Act's more generous scheme. *Id.* at 455. But this was not merely because of congressional silence; rather it was because of "the attention that [the CSRA] g[a]ve[] throughout to the rights of nonpreference excepted service employees, and the fact it does not include them in provisions for administrative and judicial review contained in Chapter 75." *Id.* at 448. The Court concluded that these features "combine[d] to establish a congressional judgment that those employees should not be able to demand review for the type of personnel action *covered by the chapter.*" *Id.* (emphasis added). Neither *Elgin* nor *Fausto* has anything to say about claims, like NAIJ's, that do not challenge CSRA-covered actions. *See Feds for Med. Freedom*, 63 F.4th at 372–73, 384–85; *see also Bosco v. United States*, 931 F.2d

879, 883 (Fed. Cir. 1991), *adhered to on reh'g*, 976 F.2d 710 (Fed. Cir. 1992) ("The Supreme Court did not rule [in *Fausto*] that the CSRA provided the only means of judicial review of *any* actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically *covered* by the CSRA.").[5]

The government's fallback argument that Chapter 23 somehow affords meaningful judicial review of NAIJ's claims fares no better. As NAIJ explained in its opening brief, even if an immigration judge could challenge the Policy as a covered action, Chapter 23 does not provide judges with a guarantee or even a likelihood of judicial review; it provides them only a means to raise their constitutional claims with the OSC, which may—or may not—refer their claims to the MSPB. Pl. Br. 26–29. Because judicial review is available only for final actions of the MSPB, *see* 5 U.S.C. § 1214(c), the possibility of review exists if and only if the OSC decides in its sole and unreviewable discretion to petition the Board for corrective action, *see id.* § 1214(b)(2)(C). This narrow and uncertain pathway to review is not meaningful. *Feds for Med. Freedom*, 63 F.4th at 380; *see also Axon*

---

[5] *Fausto* also has limited application here because it did not involve constitutional claims. As the Court explained in *Elgin*, "[a]lthough *Fausto* interpreted the CSRA to entirely foreclose judicial review, the Court had no need to apply a heightened standard like that applied in *Webster v. Doe* because Fausto did not press any constitutional claims." 567 U.S. at 11 n.4 (citation omitted).

*Enter.*, 598 U.S. at 188 (reaffirming *Free Enterprise Fund*'s conclusion that review was not "meaningful" where "[n]ot every Board action . . . culminates in Commission action—which alone the statute makes reviewable in a court of appeals" (quoting *Free Enter.*, 561 U.S. at 490–91)).

The government claims that "it is [not] significant" that only some claims filed with the OSC have a pathway to judicial review while others do not, because that process is designed to weed out only "frivolous" complaints. Opp. Br. 31. But the government conflates the Special Counsel's duty to investigate a complaint with its separate decision to petition the Board for corrective action. *Compare* 5 U.S.C. § 1214(a)(1)(A) (providing that the Special Counsel "shall investigate" a complaint "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred"), with *id.* § 1214(b)(2)(C) (providing that "the Special Counsel *may* petition the Board for corrective action" (emphasis added)). The Special Counsel's discretion to petition the MSPB is *unfettered*; it is up to the Special Counsel alone to decide whether an immigration judge can raise their claims before the Board—and from there obtain judicial review.

The government's suggestion that NAIJ's members should nonetheless have to run this gauntlet before attempting to file in district court is misguided. *Thunder Basin* does not establish a requirement to exhaust, but rather a framework for assessing whether Congress intended by its creation of an alternative scheme of

review to impliedly withdraw district court jurisdiction over a plaintiff's claims. Pl. Br. 27. The central consideration in this framework is whether "a finding of preclusion *could* foreclose all meaningful judicial review." 510 U.S. at 212–13 (emphasis added); *see also Bennett v. SEC*, 844 F.3d 174, 183 n.7 (4th Cir. 2016) ("[M]eaningful judicial review is the most important [*Thunder Basin*] factor."). Where the answer to that question is "yes," courts generally "presume" that Congress did not intend to strip jurisdiction. *Free Enter.*, 561 U.S. at 489. They do not require plaintiffs to proceed through the scheme "just in case." *See* Pl. Br. 27.[6]

Even if Chapter 23 did eventually offer judicial review of NAIJ's claims, that review would still not be meaningful because it would come entirely too late. *See* Pl. Br. 29–31. Requiring individual immigration judges to file a complaint with the OSC risks a lengthy delay before their claims could ever be heard in an Article III court. And EOIR's Policy would, in the meantime, continue to inflict irreparable harm on the First Amendment rights of NAIJ's members and the listening public.

The government suggests that any ongoing suppression of immigration judges' speech is of no moment so long as NAIJ's challenge reaches a judicial forum someday. Opp. Br. 32–33. But this simply is not the law. The Supreme Court has made clear that where there is ongoing harm that cannot be undone by post-

---

[6] Indeed, on the government's theory, NAIJ would not be able to file in district court even if the CSRA failed to yield Federal Circuit review of its claims. *See* Opp. Br. 23.

proceeding judicial review, such review "would come too late to be meaningful." *Axon Enter.*, 598 U.S. at 191; *see also Bennett*, 844 F.3d at 186 n.13. NAIJ challenges a prior restraint that silences would-be speakers and deprives the public of speech they are entitled to hear. This is the paradigmatic "here-and-now injury" that "is impossible to remedy once the proceeding is over, and appellate review kicks in." *Axon Enter.*, 598 U.S. at 191; *see also Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (describing a prior restraint on speech as "the most serious and the least tolerable infringement on First Amendment rights"); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

> ## 2. NAIJ's claims are wholly collateral to the CSRA and outside the expertise of the MSPB.

The government's arguments fare no better on the last two *Thunder Basin* factors. NAIJ's claims are wholly collateral to the CSRA because they do not seek to reverse a covered employment action. *See* Pl. Br. 31–33. The government disputes that fact solely on the ground that the Policy is a covered action, Opp. Br. 34–35, but for the reasons already given, it is not, *see supra* Part I.A.2.

NAIJ's claims are also beyond the OSC's and MSPB's expertise because they raise "standard questions" of constitutional law that are "detached from 'considerations of agency policy.'" *Axon Enter.*, 598 U.S. at 194–95 (quoting *Free Enter.*, 561 U.S. at 491); *see also* Pl. Br. 33–34. The government insists that there

24

are threshold questions unique to the employment context to which those agencies could apply their expertise, Opp. Br. 35, but it fails to identify even a single one. The absence of such questions distinguishes this case from *Elgin* and *Rydie*, which involved preliminary issues that could "obviate the need to address" the plaintiff's constitutional claims. *Cf. Elgin*, 567 U.S. at 22–23 (MSPB could avoid reaching plaintiff's constitutional claims by deciding that his resignation did not amount to a constructive discharge); *Rydie*, 2022 WL 1153249, *8 (same where Board could alleviate plaintiffs' due process concerns by "granting more procedural safeguards," or "determin[ing] that action against them wouldn't 'promote the efficiency of the service'" (quoting 5 U.S.C. § 7513(a))).[7]

## Conclusion

This Court should reverse the district court's grant of Defendant's motion to dismiss and remand for further proceedings.

April 12, 2024                          Respectfully submitted,

                                        /s/ Ramya Krishnan
                                        Ramya Krishnan

---

[7] To the extent the government argues that the OSC is "uniquely positioned" to decide whether the Policy is a CSRA-covered action, Opp. Br. 30, it is incorrect. "[C]ourts, including this one, have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006); *see also Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 479 (D.C. Cir. 2001), *modified on denial for reh'g,* 270 F.3d 957 (D.C. Cir. 2001) ("[A]dministrative agencies have no particular expertise in determining the scope of an Article III court's jurisdiction."); *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 718 (6th Cir. 2013) (similar).

Xiangnong Wang
Alexia Ramirez
Alex Abdo
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
Phone: (646) 745-8500
Fax: (646) 661-3351
ramya.krishnan@knightcolumbia.org

Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
Phone: (703) 684-1100
Fax: (703) 684-1104
vmg@robinhoodesq.com

26