**23-2235**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

────────────

NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers,

*Plaintiff–Appellant,*

v.

SIRCE E. OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review,

*Defendant–Appellee.*

────────────

On appeal from the United States District Court for the
Eastern District of Virginia — No. 1:20-cv-00731-LMB-JFA (Brinkema, L.)

## RESPONSE TO PETITION FOR REHEARING AND
## REHEARING EN BANC

Ramya Krishnan
Xiangnong Wang
Stephany Kim
Alex Abdo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100
vmg@robinhoodesq.com

*Counsel for Plaintiff–Appellant*

# Table of Contents

Table of Authorities ........................................................................... ii

Introduction ....................................................................................... 1

Statement of the Case ........................................................................ 3

Argument ............................................................................................ 6

    I.     The panel's decision concerning step one of the *Thunder Basin* framework was correct and does not otherwise warrant rehearing. ........... 6

          A.    The decision is consistent with Supreme Court precedent because it focuses on congressional intent, which is the touchstone of *Thunder Basin*. ........................................................ 6

          B.    The decision does not otherwise raise any questions of exceptional importance that warrant rehearing. ............................ 10

          C.    Even if otherwise warranted, rehearing would be premature, because the panel did not answer the key question it raised, but rather remanded for further consideration. ............................. 14

    II.    Although the Court erred in suggesting for purposes of step two of the *Thunder Basin* framework that NAIJ could obtain meaningful judicial review through the CSRA, that error does not warrant rehearing because it was made in dicta. .................................................. 14

Conclusion ....................................................................................... 17

Certificate of Compliance ............................................................... 18

# Table of Authorities

## Cases

*Am. Fed. of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) .................................................................................................. 12

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) ............................... 10, 16

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) ................................... 4, 5

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ...................................... 7

*Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023) (en banc), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023) .................... 15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) .................................................................................................. 10

*Jolley v. United States*, 549 F. Supp. 3d 1 (D.D.C. 2021) ..................... 12

*Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021) ................................... 16

*Pinar v. Dole*, 747 F.2d 899 (4th Cir. 1984) ........................................ 15

*Ross v. Blake*, 578 U.S. 632 (2016) .................................................... 10

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ..................................... 10

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) .............. 1, 2, 5, 7

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ................................. 10

*United States v. Fausto*, 484 U.S. 439 (1988) ....................................... 7

*United States v. Frank*, 8 F.4th 320 (4th Cir. 2021) ............................. 14

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ......................... 12

## Statutes

5 U.S.C. § 1214 ................................................................................. 16

## Introduction

This case arises from a challenge brought by the National Association of Immigration Judges ("NAIJ") to a sweeping prior restraint on the speech of the nation's immigration judges. Under a policy issued in 2021, the Executive Office for Immigration Review ("EOIR") categorically prohibits immigration judges from speaking publicly in their private capacities about immigration law or policy or about the agency that employs them. On these topics, judges can seek approval to speak in an official capacity—that is, to be a mouthpiece for the agency—but they cannot share their personal views. The district court dismissed the case after concluding that the Civil Service Reform Act ("CSRA") impliedly divested it of subject matter jurisdiction to hear NAIJ's claims. It did so applying the two-step framework established by the Supreme Court in *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), for determining whether Congress intended to withdraw district-court jurisdiction over a plaintiff's legal claims by creating an alternative scheme of review.

A panel of this Court correctly vacated the district court's decision, after determining that intervening factual developments may have so substantially undermined the functioning of the CSRA's review scheme that the statute no longer satisfies step one of this framework. That step asks whether Congress's intent to impliedly withdraw district-court jurisdiction is "fairly discernible in the statutory

scheme." *Thunder Basin*, 510 U.S. at 207. The panel correctly concluded that recent events cast serious doubt over the question of whether the CSRA meets this test. Since assuming office, President Trump has claimed the power to fire the Special Counsel and members of the Merit Systems Protection Board ("MSPB") for purely political reasons, and he has in fact done so. The result is that the CSRA no longer provides independent administrative review of executive branch employment actions, and that the only pathway to judicial review through the scheme is now a guaranteed dead end. As the panel observed, these developments seriously call into question whether courts should continue to infer from the CSRA an unstated congressional intent to withdraw district-court jurisdiction over claims arising from federal employment.

The case does not warrant panel rehearing or rehearing en banc. To begin, the panel's decision is consistent with Supreme Court precedent and does not otherwise raise any question of exceptional importance. The government argues that the decision "introduces a novel requirement" into step one of the *Thunder Basin* framework by considering changed facts on the ground. Pet. 1. But the purpose of that framework is to give effect to congressional intent. And the panel correctly determined that it would be inconsistent with congressional intent to funnel claims through a remedial scheme that the President has eviscerated. Granting rehearing would also be premature because the panel did not actually decide whether the

CSRA fails step one of the *Thunder Basin* framework. Because the answer to that question depends on a factual record, the panel appropriately remanded to the district court for further consideration. Finally, although the panel erred in suggesting for the purposes of step two of the framework that NAIJ could obtain meaningful judicial review through the CSRA, that error does not warrant rehearing because it was made in dicta.

## Statement of the Case

NAIJ is a non-partisan, non-profit voluntary association of immigration judges formed to promote the independence, dignity, professionalism, and efficiency of the U.S. immigration courts. SAC ¶ 11 (JA016–017). From 1979 to 2022, NAIJ was the certified bargaining representative of all non-supervisory immigration judges. *Id.* NAIJ was formally decertified on April 15, 2022, but it remains a voluntary association of immigration judges and continues to have hundreds of dues-paying members. *Id.*

NAIJ filed this lawsuit on July 1, 2020 to challenge a speaking engagement policy issued by EOIR in 2017, and substantially revised in 2020, that categorically prohibits immigration judges from speaking publicly in their private capacities about immigration or EOIR. Prior to 2017, immigration judges regularly spoke at local and national conferences, guest lectured at universities and law schools, and participated in immigration law trainings—all in their personal capacities, and all without

interfering with the work of EOIR. SAC ¶ 17 (JA019). While approval was required for these activities, immigration judges routinely received that approval. SAC ¶ 18 (JA019).

In 2021, while an appeal before this Court was pending, EOIR issued the currently operative speaking engagement policy, which continues to categorically prohibit immigration judges from speaking about immigration or EOIR in their private capacities. It does so by deeming "official capacity" all speech that discusses "agency policies, programs, or a subject matter that directly relates to [immigration judges'] official duties." SAC ¶ 29 (JA022); *see also* Op. 5 (JA068). The effect of the policy has been to silence immigration judges on topics that are of substantial public interest, including recent changes to the immigration legal system. SAC ¶¶ 47–55 (JA028–034), ¶¶ 57–62 (JA034–036).

On September 21, 2023, the district court granted the government's motion to dismiss NAIJ's second amended complaint, determining that the CSRA impliedly divested it of jurisdiction over NAIJ's claims. Op. 1–2 (JA064–JA065). The district court reached this conclusion by applying the two-step framework from *Thunder Basin*. Under this framework, courts must ask, first, "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Bennett v. SEC*, 844 F.3d 174, 181 (4th Cir. 2016) (quoting *Thunder Basin*, 510 U.S. at 207). Second, and if so, courts ask "whether [the plaintiff's] 'claims are of the

type Congress intended to be reviewed within [the scheme].'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). In answering this question, courts consider, among other markers of congressional intent, whether precluding district-court jurisdiction could "foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212–13.

On December 11, 2024, a panel of this Court heard oral argument on NAIJ's appeal, and, on June 3, 2025, it vacated and remanded to the district court to consider whether intervening factual developments meant that the CSRA no longer satisfied step one of the *Thunder Basin* framework. Op. 4. The panel explained that, between oral argument and decision, President Trump had assumed office and terminated the Special Counsel and two members of the MSPB resulting in the Board's lack of quorum.[1] Op. 15–16. It also noted that, in response to lawsuits challenging these terminations, the government has argued that the CSRA's protections against at-will removal of the Special Counsel and members of the MSPB violates the separation of powers. Op. 19. The panel took judicial notice of these developments, which are a matter of public record, and concluded that they "raise[d] serious questions" as to whether the CSRA functions as Congress intended. Op. 15. Because the CSRA's text, structure, and purpose demonstrate that Congress intended to channel claims

---

[1] It appears that only one member of the MSPB, the chair, was terminated; her removal had the effect of depriving the Board of quorum. Another member was demoted from the position of vice chair and subsequently resigned.

through the scheme only to the extent the scheme functions as it envisioned, the panel remanded to the district court to assess this question. Op. 16.

Although the panel did not decide whether the first step of the *Thunder Basin* framework was satisfied, it went on to consider whether NAIJ's claims would hypothetically fall within the CSRA, and concluded that they would. Op. 20. The court reached this conclusion on the misunderstanding that NAIJ could obtain meaningful judicial review of its First Amendment prior-restraint claims by filing a complaint with the Office of Special Counsel. Op. 26–29. As explained below, this conclusion was erroneous but made in dicta. *See infra* Part II.

**Argument**

**I.    The panel's decision concerning step one of the *Thunder Basin* framework was correct and does not otherwise warrant rehearing.**

**A.    The decision is consistent with Supreme Court precedent because it focuses on congressional intent, which is the touchstone of *Thunder Basin*.**

In vacating and remanding to the district court, the panel faithfully applied step one of the *Thunder Basin* framework, which asks "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" Op. 12 (quoting *Thunder Basin*, 510 U.S. at 207). Courts assess congressional intent at step one by examining "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful judicial

review." *Thunder Basin*, 510 U.S. at 207 (internal citation omitted). That is precisely what the panel did when it determined that Congress intended to strip district-court jurisdiction only "when the [CSRA] functions as Congress intended," Op. 14–15, and that recent developments had seriously called that functioning into question, *id*. 4.

The panel acknowledged that "until recently" the Supreme Court's decisions in *United States v. Fausto*, 484 U.S. 439 (1988) and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012) would have made its analysis at step one "simple." Op. 14. Those cases held that Congress's intent to preclude district-court review through the CSRA was fairly discernible because of the "painstaking detail with which the [statute] sets out the method for covered employees to obtain review of adverse employment actions," *Elgin*, 567 U.S. at 11–12, including "the primacy of the MSPB for administrative resolution of disputes over [such] action," *Fausto*, 484 U.S. at 449. But as the panel correctly observed, the CSRA's detailed remedial scheme also establishes that "[t]o maintain Congress' intent, the MSPB and Special Counsel must function such that they fulfill their roles prescribed by the CSRA." Op. 15.

Based on a careful review of the CSRA's text, structure, and purpose, the panel also concluded that the statute was designed to protect the independence of the MSPB and Special Counsel. Op. 16. To begin, the CSRA's legislative history makes plain that Congress enacted the scheme to preserve the merits system for all federal

employees, and to "prevent[] regression back to the 'spoils' system of the 19th century, in which employees advanced on the basis of 'political or personal favoritism.'" Op. 16 (quoting S. Rep. 95-969, at 2–3). Congress expressly stated that the "establishment of a *strong and independent* [MSPB] and Special Counsel" was critical to this purpose. *Id.* (quoting S. Rep. 95-969, at 6–7). Second, Congress secured the independence of MSPB members and the Special Counsel by prohibiting their removal by the President except for "inefficiency, neglect of duty, or malfeasance in office." Op. 17 (quoting 5 U.S.C. §§ 1202(d), 1211(b)). Third, Congress further insulated the agencies from Presidential pressure by requiring that MSPB members and the Special Counsel be Senate-confirmed, providing for a term in office longer than the President's, and imposing partisan-balance requirements. Op. 18. Finally, Congress gave the agencies "substantial independent authority to [] act outside the influence of the President." Op. 18. For example, the MSPB may issue subpoenas, call witnesses to testify at hearings, and enforce compliance with its final decisions. Op. 18. And the Special Counsel may conduct investigations, access agency records or materials relevant to an investigation, petition the MSPB for corrective action, and initiate disciplinary action against those who engage in prohibited personnel practices. Op. 18–19.

The government argues that the panel's decision conflicts with the Supreme Court's decisions in *Fausto* and *Elgin*. Pet. 13. But as the panel correctly concluded,

those decisions held only that the CSRA strips district-court jurisdiction "when functioning as Congress intended." Op. 13. When those cases were decided, there was no serious cloud over the continued functioning of the MSPB and Special Counsel. Now, there is. As the panel remarked, during the pendency of this case, the President has removed the Special Counsel and neutered the MSPB by depriving it of a quorum. Op. 15. The government has also responded to lawsuits challenging these removals by "argu[ing] that the removal protections enshrined in the CSRA are violations of separation of powers, thereby calling into question the constitutionality of a critical aspect of the CSRA," without which high-ranking government officials may engage in prohibited conduct and then pressure the agencies assigned to police that misconduct into inaction. Op. 19 (cleaned up). Although the constitutionality of the CSRA's removal protections has not been finally resolved, the Supreme Court has stayed reinstatement of the MSPB chair pending review of the government's appeal and any petition for a writ of certiorari. *Id.*

Nothing in the Supreme Court's *Thunder Basin* decisions requires courts to turn a blind eye to these efforts to dismantle the CSRA's remedial scheme. The touchstone of these decisions is congressional intent. The government's approach would defeat that intent by requiring federal employees to raise their claims through a dead-end administrative process that will never yield judicial review and that in

any event remains susceptible to political interference. *Cf. Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (explaining that the creation of a scheme for agency review precludes district-court jurisdiction where "[t]he agency effectively fills in for the district court, with the court of appeals providing judicial review"); *see also Ross v. Blake*, 578 U.S. 632, 643 (2016) (holding that plaintiffs need not exhaust under the Prison Litigation Reform Act if the administrative process "operates as a simple dead end"). The panel's approach, by contrast, respects Congress's intent by channeling claims to this process only to the extent it functions as Congress intended—that is, by allowing employees to "receive adequate and independent review of their claims." Op. 4.[2]

## B. The decision does not otherwise raise any questions of exceptional importance that warrant rehearing.

The government argues that the panel's decision warrants rehearing for three additional reasons, but none has merit.

---

[2] The government is similarly wrong to contend that the panel disregarded Supreme Court precedent by permitting the district court to consider, on remand, whether MSPB members and the Special Counsel retain removal protections. *Cf.* Pet. 14–15 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020); *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021)). The cases it cites hold only that unconstitutional removal protections are severable from their statutory schemes, but the question here is not whether the CSRA is void, but rather whether courts should continue to infer from the statute an unstated congressional intent to eliminate district-court jurisdiction over claims where the scheme no longer functions as Congress intended.

First, the government argues that administrative channeling is appropriate even though the MSPB lacks a quorum, and even though there are delays in the processing of employees' claims, *see* Pet. 15–17, but the panel rested its decision on much more. As explained above, the panel properly recognized that CSRA's remedial scheme has been fatally undermined in at least two ways: by the President's dismissal of the key adjudicators within the scheme, including the Special Counsel; and by the President's erosion of the political independence necessary for the scheme to provide a meaningful check on executive abuse. *See* Op. 15–20. The President's dismissal of the Special Counsel and MSPB chair means that the CSRA's pathways to judicial review are effectively blocked. Claims brought before the Office of Special Counsel challenging prohibited personnel practices will never see the light of day. And although the government suggests that administrative judges may still adjudicate appeals challenging adverse actions, their decisions cannot become final or judicially appealable if either party files a petition for review with the MSPB. Pet. 16.

It is also no answer to the panel's concerns to say, as the government does, that the MSPB has previously lacked a quorum or operated slowly. Whatever the functioning of the CSRA at other times, it is simply not plausible to infer that Congress intended to channel employees' claims through a scheme that the President has the unfettered power to thwart at every turn.

11

The two cases the government cites are not to the contrary. *See* Pet. 17. In one, the D.C. Circuit made clear that the union at issue would "eventually obtain review and relief," *American Federation of Government Employees, AFL-CIO v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019), but that is not the case here. In the other, a district court said that "political gridlock" alone was not sufficient to undermine a system of administrative review, *Jolley v. United States*, 549 F. Supp. 3d 1, 6 (D.D.C. 2021), but this case involves more than mere gridlock. As the panel noted, it involves fundamental changes that call into question "whether the CSRA continues to provide a functional adjudicatory scheme" at all. *See* Op. 20.

Second, the government claims that the panel's decision violates the party presentation principle, Pet. 17–18, but that is mistaken. In *United States v. Sineneng-Smith*, 590 U.S. 371 (2020), the Supreme Court noted that "a court is not hidebound by the precise arguments of counsel," but criticized the Ninth Circuit for performing a "radical transformation" of the defendant's case. *Id.* at 380. Nothing of the sort happened here. NAIJ has maintained all along that the *Thunder Basin* framework is not satisfied in this case. It is no "radical transformation" to arrive at that conclusion at step one, as opposed to step two, of the framework—particularly given that both steps ultimately address the question of whether Congress intended to channel the relevant claims through an alternative scheme of review. And in any event, the only

12

reason NAIJ did not press the theory raised by the panel is because the factual developments relied upon by the panel post-dated briefing and oral argument.

Finally, the government asserts that the panel's decision will impose burdens on the judiciary and federal employers, *see* Pet. 18–19, but that assertion is meritless. The government suggests that the panel's decision will enable plaintiffs to obtain district-court review by alleging any deficiency in the CSRA's scheme, *see id.* 18, but the decision says only that district-court review may be available where the executive branch has fatally undermined the scheme, such that it no longer continues to function as Congress intended. Op. 20. The government also claims that the panel's decision fails to provide guidance on "how district courts should resolve the subjective factual questions [the panel] believed relevant to the underlying inquiry," Pet. 18, but the decision is clear that the lodestar should be congressional intent, as it was in *Thunder Basin*. Lastly, if the government were correct that rehearing is justified because the panel's decision requires jurisdictional discovery, *see* Pet. 19, then rehearing would be routine, rather than reserved for matters of exceptional importance. The district court will be best positioned to alleviate any undue burdens of discovery, and the government can always seek this Court's intervention to limit unnecessarily intrusive demands.

**C.** **Even if otherwise warranted, rehearing would be premature, because the panel did not answer the key question it raised, but rather remanded for further consideration.**

Even if the question of whether the CSRA fails step one of the *Thunder Basin* framework might warrant further consideration, rehearing now would be premature because the panel did not actually resolve that question. All the panel concluded was that the functionality and independence of the Special Counsel and MSPB have been "called into question," Op. 20, and that further factfinding in the district court is necessary to answer that question. Any further review by this Court should wait until the district court has had an opportunity to engage in that factfinding and to determine whether it may exercise jurisdiction over NAIJ's suit. This Court is a "court of review, not first view." *United States v. Frank*, 8 F.4th 320, 333 (4th Cir. 2021) (cleaned up).

**II.** **Although the Court erred in suggesting for purposes of step two of the *Thunder Basin* framework that NAIJ could obtain meaningful judicial review through the CSRA, that error does not warrant rehearing because it was made in dicta.**

The panel erred in suggesting that NAIJ could obtain meaningful judicial review through the CSRA by bringing its prior-restraint claims to the Office of Special Counsel. Op. 23–29. This is wrong twice over.

First, NAIJ cannot bring its claims to the Office of Special Counsel because, as NAIJ explained at length in its earlier briefing, Br. 19–26; Reply Br. 8–16, the

policy it challenges is not a CSRA-covered action. The panel suggested that the policy may be challenged as a "significant change in . . . working conditions"—one of the twelve "personnel actions" actionable under Chapter 23 of the statute as a prohibited personnel practice—but this reading is at odds with the CSRA's text, structure, and precedent. Op. 23. The phrase "any other significant change in  . . . working conditions" appears in a residual clause following a list of routine employment actions taken against individual employees—actions like the decision to "promote or reassign a single employee." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir. 2023) (en banc), *cert. granted and vacated as moot*, 144 S. Ct. 480 (2023). The most natural reading of the residual clause is that it is similarly limited to "discrete employment decisions," *id.*, and does not reach broad prior restraints on private speech of the kind at issue here. This reading is consistent with the CSRA's structure, which provides no guarantee of judicial review to employees who suffer "personnel actions" because these are considered to be relatively "minor." *Pinar v. Dole*, 747 F.2d 899, 911–12 (4th Cir. 1984). It is also in harmony with a long line of cases allowing employees to challenge speech policies directly in district court, so long as they do not target any specific sanction for non-compliance. Br. 16 (collecting cases).

Second, even if NAIJ could challenge the policy as a significant change in working conditions under Chapter 23, it could not obtain meaningful judicial review.

That chapter provides no guarantee of judicial review even when the Office of Special Counsel and MSPB are functioning. That is because judicial review is available only for final actions of the MSPB, 5 U.S.C. § 1214(c), and a challenge to a prohibited personnel practice may be adjudicated by the Board only if the Special Counsel decides, in their sole and unreviewable discretion, to petition the MSPB for corrective action, *id.* § 1214(b)(2)(C). Accordingly, even if there were a Special Counsel in place, NAIJ may never obtain judicial review because the Special Counsel could (and likely would) reject its complaint. Today, without a Special Counsel or operative MSPB in place, the situation is even worse: there is *no* prospect of judicial review. And any judicial review NAIJ could hypothetically obtain would "come too late" to be meaningful because NAIJ challenges a prior restraint that inflicts "here-and-now" injury. *Axon Enter.*, 598 U.S. at 191.

The panel's error, however, does not warrant rehearing, because it was made in dicta—that is, in reasoning that was not "necessary to the outcome." *Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021). As the panel correctly acknowledged, a court need reach step two of the *Thunder Basin* framework only "if the first step . . . is met." Op. 31. Because the panel did not find that this first step was met, its comments on step two are dicta, and are not binding on any future panel that considers whether NAIJ's claims fall within the CSRA's ambit. *Payne*, 998 F.3d at 654–55.

## Conclusion

For the foregoing reasons, the petition for rehearing or rehearing en banc should be denied.

September 2, 2025

Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
Phone: (703) 684-1100
Fax: (703) 684-1104
vmg@robinhoodesq.com

Respectfully submitted,

 /s/ Ramya Krishnan
Ramya Krishnan
Xiangnong Wang
Stephany Kim
Alex Abdo
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
Phone: (646) 745-8500
Fax: (646) 661-3351
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiff–Appellant*

## Certificate of Compliance

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,899 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

September 2, 2025                          /s/ Ramya Krishnan
                                          Ramya Krishnan