# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers,<br><br>        Plaintiff-Appellant,<br><br>        v.<br><br>SIRCE E. OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review,<br><br>        Defendant-Appellee, | No. 23-2235 |

**MOTION TO STAY ISSUANCE OF THE MANDATE**

The government respectfully seeks to stay the issuance of the mandate in this case until the deadline for filing a petition for a writ of certiorari in the Supreme Court, and, if a petition for certiorari is timely filed, until the Supreme Court disposes of the case. *See* Fed. R. App. P. 41(d) and Local Rule 41. As the panel's decision recognizes, the Supreme Court has held that "[w]hen a federal employee seeks relief from an action covered by the Civil Service Reform Act, she is required to comply with the prescribed scheme of administrative and judicial review and may not bring an initial claim in federal [district] court." *National Association of*

1

*Immigration Judges v. Owen*, 139 F.4th 293, 299 (4th Cir. 2025) (*NAIJ II*); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012); *United States v. Fausto*, 484 U.S. 439, 447 (1988).  Nevertheless, the panel held that the district court could disregard *Fausto* and *Elgin* and entertain jurisdiction over plaintiff's claims seeking relief from an action covered by the Civil Service Reform Act (CSRA) if the district court determines that, as a factual matter, the CSRA's administrative review procedures are not "functioning as Congress intended." *NAIJ II*, 139 F.4th at 304; *see also id.* at 300.

In addition to disregarding relevant decisions of the Supreme Court, this new "functionality" test poses exceptional separation of powers concerns.  Under the panel's reasoning, even where the text, structure, and purpose of a statute suggest that Congress intended for the statute's administrative and judicial review procedures to be exclusive, courts may imply an exception to this otherwise exclusive regime if they determine that there is some alleged malfunction in executive enforcement of the statute that results in covered claims not being "adequately processed." *NAIJ II*, 139 F.4th at 305.  This threatens substantial uncertainty as to whether district courts in this Circuit may now entertain a broad variety of employee challenges to disciplinary actions and other personnel actions previously considered to fall within the exclusive purview of the Merit Systems

Protection Board (MSPB) and the Court of Appeals for the Federal Circuit. Given the exceptional and wide-ranging importance of this issue, the government previously moved for rehearing en banc, which was denied on November 20, 2025 by a vote of 9-6. Dkt. No. 50.

A petition for certiorari would be due on February 18, 2026. The government respectfully requests that this Court stay issuance of the mandate until the deadline for filing a petition for certiorari in the Supreme Court, and, if a petition for certiorari is timely filed, until the Supreme Court disposes of the case. Given the conflict with the Supreme Court precedent, the considerable separation of powers concerns, and the far-reaching implications of the decision's reasoning, it is clear that any petition for certiorari would present a "substantial question." Fed. R. App. P. 41(d). Likewise, because the decision's novel "functionality" test disrupts settled expectations about the CSRA's scope, "good cause" exists to stay the mandate, *id.*, in order to maintain the status quo and avoid uncertainty about application of the test, which could result in unnecessary administrative burdens for litigants and the courts. We requested plaintiff's position on this motion but have not received a response as of the time of this filing.

## DISCUSSION

The Federal Rules of Appellate Procedure provide that "[a] party may move to stay the mandate pending the filing of a petition for certiorari in the Supreme Court" if it shows that "the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). Those criteria are more than satisfied here.

1. A certiorari petition presents a "substantial question" when there is a "'reasonably probability' that four [J]ustices will vote to grant certiorari," and that there is a "fair prospect" that five Justices will vote to reverse the judgment. *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020) (per curiam). Certiorari is appropriate when a court of appeals "has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court," "has entered a decision in conflict with the decision of another United States court of appeals on the same important matter," or "decided an important question of federal law that has not been, but should be, settled by th[e] [Supreme] Court." Sup. Ct. R. 10(a), (c).

A certiorari petition seeking review of this Court's decision would clearly present a substantial question. The decision disregards relevant decisions of the Supreme Court, *see* Dkt. No. 50, at 21-29, 31-32 (Quattlebaum, J., dissenting from the denial of rehearing en banc), in favor

4

of a new and amorphous legal test that "invade[s] the role of the legislative branch," Dkt. No. 50, at 36 (Quattlebaum, J., dissenting from the denial of rehearing en banc), and "plants the seeds of real mischief to which . . . only the Supreme Court can bring to an effective halt," Dkt. No. 50, at 7 (Wilkinson, J., concurring in the denial of rehearing en banc).

As framed by this Court's opinion, this appeal turns on the question whether, under the first step of the preclusion analysis set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) it is "fairly discernible" from the Civil Service Reform Act of 1978 that Congress intended to preclude district courts from hearing claims that fall within its scope.[1] The Supreme Court has already resolved that question. It has "twice—emphatically and directly" held that the Congress intended for the CSRA's review scheme to be exclusive and therefore "that district courts lack jurisdiction over claims like the ones the National Association of Immigration Judges (NAIJ) asserts here." Dkt. No. 50, at 16 (Quattlebaum, J., dissenting from the denial of rehearing en banc); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012); *United States v. Fausto*, 484 U.S. 439, 447 (1988).

---

[1] At the second step of the *Thunder Basin* analysis, courts look to whether a plaintiff's specific claim "can be afforded meaningful review" and is "the type Congress intended to be reviewed within this [exclusive] statutory structure." 510 U.S. at 207, 212.

5

Indeed, the Supreme Court's precedent was sufficiently clear that NAIJ did not even contest the issue; it conceded that *Elgin* resolves the question of Congress's intent. Pl. Op. Br. 16-17 ("Under the first step, courts must ask whether Congress's intent to preclude district court jurisdiction is fairly discernible in the statutory scheme. The Supreme Court has already held that such intent is manifest in the CSRA . . . ." (cleaned up)).

This Court's decision disregards that binding precedent and abandons the legal test that the Supreme Court directed courts to apply in favor of a new consideration: whether, as a factual matter, a particular exclusive review scheme is "functioning as Congress intended." *NAIJ II*, 139 F.4th at 304. The decision instructs that if recent events have somehow disturbed the functioning of the CSRA, then courts should disregard *Elgin* and *Fausto* and freshly opine whether the Congress which enacted the statute would have intended for the regime to remain exclusive in light of these new developments. *Id.* at 300.

This decision not only "fails to adhere to Supreme Court precedent that is directly on point," it "creates enormous separation of powers concerns." Dkt. No. 50, at 17, 32 (Quattlebaum, J., dissenting from the denial of rehearing en banc). The Supreme Court has instructed that

6

Congress's intent to preclude district court jurisdiction should be assessed by looking to the statute's "language, structure, and purpose," including, where appropriate, its "legislative history." *Thunder Basin*, 510 U.S. at 207; *Elgin*, 567 U.S. at 10 (analyzing "the CSRA's text, structure, and purpose"); *Fausto*, 484 U.S. at 444 ("The answer is to be found by examining the purpose of the CSRA, the entirety of its text, and the structure of review that it establishes."); *see also Axon Enter. Inc., v. Fed. Trade Comm'n*, 598 U.S. 175, 209 (2023) (Gorsuch, J., concurring) (suggesting that analysis of Congress's intent to preclude jurisdiction should "begin[] with the language of the relevant statutes, and when the statutory language provides a clear answer, it ends there as well" (quotation marks omitted)). Ultimately, the question is whether Congress has created comprehensive "procedures designed to permit agency expertise to be brought to bear on particular problems." *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quotation marks omitted). If so, then Congress's intent for those procedures to be exclusive is clear. *Id.*

That legal inquiry into the language, structure, and purpose of the statute Congress enacted leaves no room for an ad hoc factual analysis of whether the statute has been effectively implemented after its enactment. If the text, structure, and purpose of the statutory scheme suggest that

7

Congress intended for its procedures to be exclusive, then that legislative choice must be respected.

If, over the course of time, problems develop that allegedly interfere with the functioning of the regime, "then it would seem logical that Congress be the one to fix the problem." Dkt. No. 50, at 7 (Wilkinson, J., concurring in the denial of rehearing en banc); Dkt. No. 50, at 32 (Quattlebaum, J., dissenting from the denial of rehearing en banc) ("If the statute is not functioning as Congress thinks it should be in light of the administration's actions or judicial decisions, Congress can amend it."); *see also* S.2977 - 119th Congress (2025-2026): FAST Justice Act, S.2977, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/senate-bill/2977 (proposed legislation that would permit an employee to file a civil action if the MSPB has not taken action within 120 days of the filing of an appeal). But the courts cannot properly disregard the statutory scheme and create their own procedures simply because they believe that the Congress who enacted the statute may have enacted a different law had it anticipated political events occurring decades in the future. *See* Dkt. No. 50, at 32-33 (Quattlebaum, J., dissenting from the denial of rehearing en banc); Dkt. No. 50, at 8 (Wilkinson, J., concurring in the denial of rehearing en banc) ("Left untamed, functionality will vest the judiciary with general

supervisory authority over both the legislative and executive branches."); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654-55 (2020) ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.").

2. This disregard of Supreme Court precedent and exceptional separation of powers concern demonstrates that a petition for certiorari would present a "substantial question." Fed. R. App. P. 41(d). But this Court's decision suffers from two additional problems underscoring that its adoption of a novel "functionality" test "plants the seeds of real mischief" that can only effectively be halted by the Supreme Court's intervention. Dkt. No. 50, at 7 (Wilkinson, J., concurring in the denial of rehearing en banc).

First, the events that preceded this Court's adoption of the "functionality" test are subject to ongoing litigation. The decision highlights that after oral argument in this case, the President removed the Special Counsel and a member of the MSPB[2]—which resulted in the MSPB

---

[2] The panel's decision stated that the President removed two members of the MSPB. *NAIJ II*, 139 F.4th at 305. Only one member, Cathy Harris, was removed. The other member, Raymond Limon, retired. See MSPB, Member Raymond A. Limon Retiring (Feb. 28, 2025),

9

lacking a quorum—and that the government has taken the position in lawsuits that the "removal protections enshrined in the CSRA are violations of the separation of powers." *NAIJ II*, 139 F.4th at 305, 307.  The decision finds tension between these actions and the CSRA's limitations on the President's ability to remove members of the MSPB and the Special Counsel "only for inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d), 1211(b), and expresses concern that Congress may not have intended for the CSRA's procedures to be exclusive in the absence of these removal protections, *NAIJ II*, 139 F.4th at 305-08.

As the decision recognizes, the lawfulness of those removals has yet to be resolved and is the subject of ongoing litigation.  *NAIJ II*, 139 F.4th at 307.  "That litigation would seem the most suitable way of addressing" any alleged 'functionality' problem.  Dkt. No. 50, at 7 (Wilkinson, J., concurring in the denial of rehearing en banc).  If the removals are improper, then the positions will be restored.  If not, then courts presiding over any challenges to the removals will address questions about the appropriate remedy, including whether the unconstitutional removal protections are severable, leaving the remainder of the statutory scheme (including the exclusivity of its review scheme) "fully operative as a law." *Free Enter. Fund*, 561 U.S. at

---

https://www.mspb.gov/publicaffairs/press_releases/Ray_Limon_Farewell_Press_Release.pdf.

509; *see also Seila Law LLC v. CFPB*, 591 U.S. 197, 234 (2020) (plurality opinion); *United States v. Arthrex, Inc.*, 594 U.S. 1, 24 (2021) (plurality opinion). The decision's "functionality" test prematurely invites judicial scrutiny into a remedial inquiry which should be addressed, as appropriate, in the context that ongoing litigation, not in this collateral litigation. At a minimum, "it is premature" to ask the question of whether Congress would have intended the CSRA to be exclusive in the absence of these removal protections "when the statute's removal protections have not [yet] been held unconstitutional." Dkt. No. 50, at 7-8 (Wilkinson, J., concurring in the denial of rehearing en banc); *Id.* at 34 (Quattlebaum, J., dissenting from the denial of rehearing en banc) ("[W]ithout a final ruling striking the removal provisions, this is neither the time nor place for such an analysis.").

Second, "functionality is a vague and impenetrable standard." Dkt. No. 50, at 8 (Wilkinson, J., concurring in the denial of rehearing en banc). This Court's decision suggests that district courts should inquire, as a factual matter, whether CSRA claims are being "addressed adequately and efficiently." *NAIJ II*, 139 F.4th at 305. But the decision provides no administrable means for courts to determine whether delays in processing have become sufficiently severe as to warrant creating a judicially created

11

exception from the otherwise exclusive regime Congress created. *See* Dkt. No. 50, at 8 (Wilkinson, J., concurring in the denial of rehearing en banc) ("Functionality assessments are too frequently untethered, as I see it, to any principle other than judicial preference."); *Id.* at 33 (Quattlebaum, J., dissenting from the denial of rehearing en banc) ("As courts, we should stick to applying and interpreting those words, not trying to divine what Congress would or would not have done differently had it known about the political environment today.").

The subjectivity of this inquiry also creates a high risk of inconsistent decisions on a jurisdictional issue where uniform rules are necessary. *See, e.g., Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Lapides v. Board of Regents of the Univ. Sys. Of Ga.*, 535 U.S. 613, 621 (2002) ("[J]urisdictional rules should be clear."). This potential for inconsistency can encourage forum shopping that undermines Congress's intent for judicial review of CSRA claims to be governed by a uniform body of law developed in the Federal Circuit. *See Elgin*, 567 U.S. at 17.

The "functionality" test also leaves questions of jurisdiction "in a constant state of flux." Dkt. No. 50, at 33 (Quattlebaum, J., dissenting from the denial of rehearing en banc). For example, this Court's decision expressed concern that the absence of two members of the MSPB resulted

12

in the MSPB lacking a quorum, which might interfere with the functioning of the CSRA. *NAIJ II*, 139 F.4th at 305, 307. But a quorum was restored when Congress confirmed a new member of the MSPB on October 7, 2025. *See* PN55-49 - Nomination of James Woodruff II for Merit Systems Protection Board, 119th Congress (2025-2026), PN55-49, 119th Cong. (2025). This demonstrates the difficulties of a jurisdictional test that depends upon the vicissitudes of who is appointed and who is removed. If, for example, a district court exercises jurisdiction over a claim because the MSPB lacks a quorum, does the court then lose jurisdiction after, as here, the Senate confirms new members and restores a quorum? Does it regain jurisdiction if another member subsequently retires and a quorum is once again lost? The Court's "functionality" test provides no guidance on this question. These considerations further demonstrate that there is a reasonably probability that four Justices will vote to grant certiorari, and that five Justices will vote in the government's favor on the merits.

3. Finally, "good cause" exists to stay the mandate in order to preserve the status quo. Fed. R. App. P. 41(d)(1). As already noted, the Supreme Court has made clear that under the first step of the *Thunder Basin* inquiry, Congress's intent for the CSRA's procedures to be exclusive is fairly discernible from the statute's text, structure, and purpose. This

13

Court's decision disturbs this settled understanding, and employees or unions could see the decision as a license to pursue district court litigation challenging a broad variety of employee disciplinary actions and other personnel claims that undisputedly fall within the CSRA's exclusive scope on the theory that the CSRA is not functioning as intended due to the President's removal of the Special Counsel and members of the MSPB (or any other alleged defect in the "functionality" of the administrative procedures). The decision thus creates substantial confusion as to whether district courts should entertain those claims, and if so, whether they should hold those claims in abeyance pending resolution of the lawsuits challenging those removals.

Further, as discussed, this Court's decision anticipates that district courts facing arguments that the CSRA precludes jurisdiction over various personnel claims should engage in fact-finding to determine whether CSRA claims are being "addressed adequately and efficiently." *NAIJ II*, 139 F.4th at 305. Because that standard is amorphous, it potentially opens the door to extensive disputes about the appropriate scope of discovery into MSPB and Special Counsel operations in a broad variety of cases. Any such discovery will ultimately distract from those agencies' timely resolution of administrative claims and may ultimately prove to be unnecessary if the

Supreme Court grants a petition for certiorari in this case. To avoid this uncertainty, which could create unnecessary administrative burdens for litigants and courts, this Court should stay its mandate and assure that the status quo is maintained until the time to petition for certiorari in this case has expired.

## CONCLUSION

For these reasons, this Court should stay issuance of the mandate until the deadline for filing a petition for certiorari, February 18, 2026, and, if a petition for certiorari is timely filed, until the Supreme Court disposes of the case.

Respectfully submitted,

MICHAEL S. RAAB
*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
 (202) 353-9039
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7710*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., NW*
 *Washington, D.C. 20530*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d).  This motion contains 3,113 words.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

# CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht
