# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers,

*Plaintiff–Appellant,*

v.

SIRCE E. OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review,

*Defendant–Appellee.*

On appeal from the United States District Court for the
Eastern District of Virginia — No. 1:20-cv-00731-LMB-JFA (Brinkema, L.)

## RESPONSE TO MOTION TO STAY ISSUANCE OF THE MANDATE

Ramya Krishnan
Xiangnong Wang
Noah Kim
Alex Abdo
Knight First Amendment Institute
 at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100
vmg@robinhoodesq.com

*Counsel for Plaintiff–Appellant*

## Table of Contents

Table of Authorities ................................................................................................ ii

Introduction .............................................................................................................. 1

    I.     The government has not presented a "substantial question" that is likely to lead to Supreme Court review. ..................................................... 1

    II.    The government has not demonstrated good cause for a stay. ................... 8

Conclusion ............................................................................................................. 10

Certificate of Compliance ..................................................................................... 12

# Table of Authorities

**Cases**

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) ...................................................... 3, 4

*Clark v. Sweeney*, No. 25-52, 2025 WL 3260170 (Nov. 24, 2025) ...................... 6, 7

*Cohens v. Virginia*, 19 U.S. (6 Wheat) 264 (1821) ..................................................... 3

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ........................................................ 2, 4

*Gonzalez v. Thaler*, 565 U.S. 134 (2012) ..................................................................... 8

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, No. 02-5355, 2003
    WL 22319584 (D.C. Cir. Sep. 30, 2003) ............................................................... 10

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ............................................ 7

*Khulumani v. Barclay Nat. Bank Ltd.*, 509 F.3d 148 (2d Cir. 2007) ........................ 5

*Sockwell v. Comm'r, Ala. Dep't of Corr.*, No. 23-13321, 2025 WL
    2741439 (11th Cir. Sep. 23, 2025) .......................................................................... 8

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) .................................. 1, 2, 4

*United States v. Ashford*, 718 F.3d 377 (4th Cir. 2013) ............................................ 6

*United States v. Fausto*, 484 U.S. 439 (1988) ............................................................. 2

*United States v. Jones*, 308 F.3d 425 (4th Cir. 2002) ................................................ 6

*United States v. Silver*, 954 F.3d 455 (2d Cir. 2020) ................................................. 1

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ............................................. 7

*Webster v. Doe*, 486 U.S. 592 (1988) ............................................................................ 4

*White v. Plappert*, 137 F.4th 579 (6th Cir. 2025) ....................................................... 8

*Wideman v. Innovative Fibers LLC*, 100 F.4th 490 (4th Cir. 2024),
    *cert. dismissed*, 145 S. Ct. 838 (2025) ............................................................... 7, 8

**Rules**

Fed. R. App. P. 28(j) ........................................................................................ 6

Fed. R. App. P. 41 ........................................................................................... 1

U.S. Sup. Ct. R. 10 ..................................................................................... 1, 6

**Introduction**

The government's motion to stay the mandate in this case largely recycles arguments that this Court properly rejected in denying the government's petition for rehearing en banc. It should be denied. The Federal Rules of Appellate Procedure provide that a motion to stay the mandate pending the filing of a petition for certiorari in the Supreme Court must show that "the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The government's motion fails to make either showing.

**I.    The government has not presented a "substantial question" that is likely to lead to Supreme Court review.**

The standard for presenting a "substantial question" is "high." *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020). The government must demonstrate a "'reasonable probability' that four justices will vote to grant certiorari," and that there is a "'fair prospect' that five justices will vote to reverse the Panel's judgment." *Id.* (quoting *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers)); *accord* Dkt. No. 52, at 4. The government has failed to carry this burden.

First, there is no conflict between the panel's judgment and Supreme Court precedent. *See* Dkt. No. 48, at 6–10; U.S. Sup. Ct. R. 10(c). In *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), the Supreme Court established a two-step framework for determining whether Congress intended to withdraw district-court jurisdiction over a plaintiff's legal claims by creating an alternative scheme of

1

review. The panel faithfully applied the first step of that framework, by asking whether Congress's intent to withdraw district-court jurisdiction is "fairly discernible in the [CSRA's] statutory scheme." *Thunder Basin*, 510 U.S. at 207. The panel carefully examined "the [CSRA]'s language, structure, and purpose, its legislative history, . . . and whether the claims can be afforded meaningful judicial review." *Id.* And it correctly concluded that factual developments since the district court's decision may have so substantially undermined the functioning of the CSRA's review scheme that Congress's intent to channel claims through that scheme can no longer be inferred. *See* Op. 4; *see also* Dkt. No. 50, at 12 (Thacker, J., concurring).

The government argues that the panel's judgment is inconsistent with the Supreme Court's decisions in *United States v. Fausto*, 484 U.S. 439 (1988) and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012). *See* Dkt. No. 52, at 5–6. But as the panel correctly determined, those decisions held only that the CSRA strips district-court jurisdiction "when functioning as Congress intended." Op. 13. When those cases were decided, there was no serious doubt concerning the proper functioning and independence of the Merit Systems Protection Board and Office of Special Counsel. Now there is. As the panel remarked in its opinion, during the pendency of NAIJ's appeal, the President removed the Special Counsel and chair of the Merits Systems Protection Board ("MSPB") for apparently political reasons, and the

2

government has responded to lawsuits challenging those terminations by arguing that the CSRA's protections against at-will removal violate the separation of powers. *See* Op. 15–16, 19. [1]

Second, the government's separation-of-powers concerns depend entirely on its mischaracterization of the panel's decision. The government suggests that the panel's analysis is divorced from congressional intent, but congressional intent was the panel's principal focus. Implied preclusion as in *Fausto* and *Elgin* is not a conclusion courts reach lightly because it involves inferring congressional intent to silently override district-court jurisdiction that is explicitly provided by statute. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 207–09 (2023) (Gorsuch, J., concurring); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404 (1821) ("[Federal courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). It is justified only when that intent is "fairly discernible" in the text, structure, and purpose of the relevant administrative review scheme. Here, the panel carefully considered the CSRA's text, structure, and purpose as the statute is currently being interpreted and applied by the government. The government

---

[1] The government is wrong to suggest that NAIJ ever made a concession to the contrary. *See* Dkt. No. 52, at 6. The only reason NAIJ did not dispute that the CSRA satisfied the first step of the *Thunder Basin* framework in its briefing or at argument is that those steps of the case preceded the factual developments the panel relied on its decision.

argues that there is "no room" in this analysis for consideration of changed facts, *see* Dkt. No. 52, at 7–8, but it is self-evidently true that, if the government undermines key aspects of the review scheme that once justified the inference that Congress intended to withdraw jurisdiction, such an inference might no longer be justified. A contrary approach would defeat Congress's intent to channel covered claims through a *functioning* review process. *See* Dkt. No. 48, at 9–10. And it would deprive federal employees of "meaningful judicial review," *Thunder Basin*, 510 U.S. at 212–213, including of colorable constitutional claims. *See* Dkt. No. 50, at 12 (Thacker, J., concurring) ("We cannot abdicate our duty to hear constitutional challenges in the pyrrhic hope that Congress will recognize the dysfunction or lack of independence of the [MSPB] or the Office of Special Counsel and choose to act.").[2]

Third, Supreme Court review at this juncture would be premature. To start, even if the question of whether the CSRA fails step one of the *Thunder Basin* framework warrants further consideration, Supreme Court review now is not

---

[2] As the Supreme Court has repeatedly cautioned, a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional clam." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (internal quotation marks and citation omitted); *accord Thunder Basin*, 510 U.S. at 215 n.20; *Elgin*, 567 U.S. at 10. It is precisely for this reason that the Court considers the availability of meaningful judicial review in assessing whether a statutory scheme impliedly withdraws district-court jurisdiction over a plaintiff's claims. *See Axon Enter.*, 598 U.S. at 186 ("The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review.").

4

warranted because the panel did not actually resolve that question. The panel concluded only that the functionality of the CSRA's review scheme has been "called into question," Op. 20, and that further factfinding in the district court is necessary to answer that question. *Compare Khulumani v. Barclay Nat. Bank Ltd.*, 509 F.3d 148, 152–53 (2d Cir. 2007) (denying a motion to stay the mandate where granting the stay "would deprive the district court of the opportunity to address the principal issue upon which the Corporations seek Supreme Court review" and the Supreme Court of "the benefit of a fully developed foundation on which to proceed"). Review would be premature unless and until the district court conducts that factfinding and concludes that the CSRA is not in fact functioning in the manner necessary to support the inference that Congress intended to withdraw district-court jurisdiction. Moreover, as the government acknowledges, some of the factual developments relied on by the panel—namely, the removals of the Special Counsel and former MSPB Chair, and the government's subsequent insistence that removal protections enshrined in the CSRA violate the separation of powers—are the subject of ongoing litigation. Mot. 9–11. The resolution of that litigation may well be relevant to whether and when the Supreme Court reviews the issue the panel expressly left open. Supreme Court review would also be premature because there is no circuit split on the issue that was decided by the panel—namely, that recent events throw into doubt the proper functioning of the CSRA, such that further factfinding is required to

determine whether the statute continues to satisfy step one of the *Thunder Basin* framework. *Cf.* U.S. Sup. Ct. R. 10(a).

Finally, the Court should reject the government's request—made for the first time in its notice of supplemental authority, *see* Dkt. No. 55—that the Court reconsider its refusal to rehear the case, or at a minimum stay the mandate, based on the party presentation principle. As an initial matter, the government has waived its party presentation argument. The government's motion for a stay did not raise this argument, and this Court has made clear that it does "not countenance a litigant's use of Rule 28(j) as a means to advance new arguments couched as supplemental authorities." *United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013); *see also United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002). The government's attempt to relitigate its petition for rehearing via a Rule 28(j) letter filed in support of its stay motion is also improper; it goes well beyond the narrow confines of what that rule permits *See* Fed. R. App. P. 28(j).

In any case, the government's party presentation argument is without merit. The government relies on the Supreme Court's recent decision in *Clark v. Sweeney*, No. 25-52, 2025 WL 3260170 (Nov. 24, 2025), but that decision is inapposite. In *Sweeney*, the Supreme Court reversed a prior ruling of this Court that "transgressed the party-presentation principle by granting relief on a claim that [the petitioner] never asserted." 2025 WL 3260170, at *2. As the Supreme Court explained, the

Fourth Circuit did not rule on the "one, and only one" claim that the petitioner raised in his habeas petition (an ineffective assistance of counsel claim), but instead "devised a new one" based on factors well beyond that claim. *Id.* That is not what happened here. First, the panel did not grant relief based on any unraised claims. NAIJ has maintained all along that the CSRA does not impliedly withdraw district-court jurisdiction over its claims under the *Thunder Basin* framework. That the panel arrived at that conclusion at step one, as opposed to step two, of the framework is not a "radical transformation" of NAIJ's claims. *United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020). To the contrary, both steps ultimately address the question of whether Congress intended to preclude jurisdiction over the relevant claims. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *accord Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 494 n.3 (4th Cir. 2024), *cert. dismissed*, 145 S. Ct. 838 (2025).

*Sweeney* is also inapposite because the party presentation principle does not apply to questions that go to a court's subject matter jurisdiction—the sole focus of the panel's decision. As the Supreme Court has explained, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues

7

that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Such arguments "can never be waived or forfeited." *Id.* The panel was therefore required to consider, as it did, the relevance of intervening factual developments to step one of the *Thunder Basin* framework. To have ignored their significance would have "fl[own] in the face of 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Wideman*, 100 F.4th at 494 n.3 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), *cert. dismissed*, 145 S. Ct. 838 (2025).

## II. The government has not demonstrated good cause for a stay.

To establish good cause for a stay of the mandate, "there must be a likelihood of irreparable harm if the [panel's] judgment is not stayed." *Sockwell v. Comm'r, Ala. Dep't of Corr.*, No. 23-13321, 2025 WL 2741439, at *1 (11th Cir. Sep. 23, 2025) (quoting *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers)); *see also, e.g.*, *White v. Plappert*, 137 F.4th 579, 581 (6th Cir. 2025). The government cannot establish irreparable harm because the panel's decision requires only further factfinding. That factfinding might be inconvenient to the government, but it is far from the irreparable harm necessary to justify the extraordinary remedy of a stay of the Court's mandate. The government's arguments to the contrary fail to persuade.

8

The government argues that the panel's judgment "disrupts settled expectations about the CSRA's scope," and that a stay is necessary "to maintain the status quo and avoid uncertainty." Mot. 3. But as already explained, the panel's judgment calls only for further factfinding; it does not hold that CSRA preclusion no longer operates, and so it does not affect CSRA's scope. To the extent it generates uncertainty about whether CSRA will, in the future, preclude district-court jurisdiction over claims by federal employees, staying the mandate will only perpetuate that uncertainty. As the panel correctly concluded, further factfinding is necessary to determine whether the CSRA continues to satisfy step one of the *Thunder Basin* test. Permitting the district court to do that work is the fastest way to resolve any uncertainty. And once the district court conducts its review, this Court will of course hear any appeals and, at that point, can determine whether to stay any resulting decision.

The government's suggestion that allowing the district court to proceed "potentially opens the door" to extensive discovery into the Office of Special Counsel's and MSPB's operations fares no better. Mot. 14. It is premised on the assumption that NAIJ will seek and that the district court will allow discovery into the agencies' operations "in a broad variety of cases." *Id.* This puts the cart before the horse. If the district court permits discovery, and if NAIJ serves discovery requests that the government believes to be overbroad, the government may at that

point object. *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, No. 02-5355, 2003 WL 22319584, at *1 (D.C. Cir. Sep. 30, 2003) (denying a motion to stay the mandate based on Petitioners' concerns about the possible scope of discovery). But it is speculative to seek to stay the mandate based on discovery concerns that may never materialize.

Moreover, any harm the government would suffer as a result of the district court's factfinding is far outweighed by the additional irreparable harm that a lengthy stay would cause to NAIJ's members and the public. NAIJ challenges a prior restraint that silences hundreds of immigration judges on topics of urgent public interest. Issuing a stay of the mandate pending the filing of a certiorari petition would substantially delay any prospect that NAIJ's members and the public will obtain relief from that ongoing harm.

**Conclusion**

The Court should deny the government's motion to stay the issuance of the mandate in this case.

December 2, 2025                                     Respectfully submitted,

Victor M. Glasberg                      /s/ Ramya Krishnan
Victor M. Glasberg & Associates         Ramya Krishnan
121 S. Columbus Street                  Xiangnong Wang
Alexandria, VA 22314                    Noah Kim
Phone: (703) 684-1100                   Alex Abdo
Fax: (703) 684-1104                     Knight First Amendment Institute at
vmg@robinhoodesq.com                       Columbia University
                                        475 Riverside Drive, Suite 302

New York, NY 10115
Phone: (646) 745-8500
Fax: (646) 661-3351
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiff–Appellant*

## Certificate of Compliance

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,464 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

 December 2, 2025                                /s/ Ramya Krishnan
                                                        Ramya Krishnan