**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| NATIONAL ASSOCIATION OF IMMIGRATION JUDGES, affiliated with the International Federation of Professional and Technical Engineers, <br><br> Plaintiff–Appellant, <br><br> v. <br><br> DAREN K. MARGOLIN, in his official capacity as Director of the Executive Office for Immigration Review, <br><br> Defendant–Appellee. | No. 23-2235 |

**MOTION FOR A BRIEFING SCHEDULE**

Plaintiff–Appellant National Association for Immigration Judges ("NAIJ") now moves for an order setting a schedule for briefing on the question of how this Court should proceed in light of the Supreme Court's recent decision and remand in this case. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285 (2026) (per curiam).  Defendants have indicated that they will review this motion once filed and submit a response as they deem appropriate.

**Background**

As the Court will recall, this lawsuit challenges a policy of the Department of Justice's Executive Office for Immigration Review ("EOIR") that categorically prohibits immigration judges from speaking publicly in their personal capacities

1

about immigration law or policy or the agency that employs them. *See* SAC ¶ 26 (JA021–JA022); Attach. 2 to SAC (JA048–JA053) (the 2020 version of the policy); SAC ¶ 28 (JA022); Attach. 3 to SAC (JA056–JA062) (the 2021 and still-operative version of the policy). NAIJ—a non-partisan, non-profit voluntary association of immigration judges—filed suit in 2020 challenging the policy, principally on First Amendment grounds, asserting that the policy imposes an unconstitutional prior restraint on public employee speech. *See* Dist. Ct. ECF Nos. 1, 9 (JA003–JA004).

Proceedings in the district court and in this Court focused not on the merits of NAIJ's challenge, but instead on the question of whether NAIJ or its members should have first brought their constitutional challenges through administrative claims filed under the federal labor laws or (after the government decertified NAIJ) the Civil Service Reform Act ("CSRA"). NAIJ argued that it could not obtain "meaningful judicial review" through the CSRA of the "here-and-now" injuries caused by the prior restraint on its members' speech, and that, as a result, its claims should not be channeled through administrative proceedings. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). In support, it pointed to *Thunder Basin*, 510 U.S. at 212–13, which makes clear that federal claims should not be channeled through administrative proceedings unless the administrative scheme would provide for "meaningful judicial review"; to *Axon*, 598 U.S. at 191, which held that claims seeking redress

for "here-and-now" injuries should not be channeled through an administrative scheme that cannot redress those injuries; and to the line of cases that have permitted federal employees to proceed directly in district court when bringing "a simple pre-enforcement attack on a regulation restricting employee speech," *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996); *see also United States v. NTEU*, 513 U.S. 454 (1995) (exercising jurisdiction over a federal employee prior restraint challenge, one year after *Thunder Basin*, without questioning jurisdiction).

This Court reasoned that NAIJ would ordinarily be required to bring its constitutional claims through a Chapter 23 complaint filed with the Office of Special Counsel, but it reversed the district court's dismissal of NAIJ's suit after concluding that developments after briefing and oral argument in the case "call into question" the features of the CSRA that justified the inference that Congress intended to channel federal employment claims through the statute's system of administrative review. *NAIJ v. Owen*, 139 F.4th 293, 307, 309–10 (4th Cir. 2025). The Court remanded to allow the district court "to consider whether the text, structure, and purpose of the Civil Service Reform Act has been so undermined [by recent developments] that the jurisdiction stripping scheme no longer controls." *Id.* at 299–300.

The government petitioned for rehearing, which this Court denied. *NAIJ v. Owen*, 160 F.4th 100 (4th Cir. 2025). After the government petitioned for a writ of

certiorari, the Supreme Court summarily reversed on the ground of party presentation, holding that this Court's ruling was "based on an issue the parties had not raised." *NAIJ*, 146 S. Ct. at 1286–87. On that basis, the Supreme Court reversed this Court's judgment and "remanded for further proceedings consistent with [its] opinion." *Id.* at 1289.

### Argument

This Court's internal operating procedures provide that, when the Supreme Court remands a case for further proceedings, the Court "may require additional briefs and oral argument, summarily dispose of the case, or take any other action consistent with the Supreme Court's opinion." 4th Cir. Internal Operating Procedures 41.2. Respectfully, NAIJ submits that the Court should set a briefing schedule to allow the parties to fully articulate their respective views on the appropriate next steps.

If permitted this opportunity, NAIJ would make two arguments.

First, and supported by the Supreme Court's recent decision in *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026), NAIJ would argue that this Court should revisit the conclusion in its earlier opinion that the CSRA impliedly strips federal district courts of jurisdiction over a pre-enforcement challenge to a broad prior restraint on the speech of federal employees. The fundamental problem with the Court's conclusion is that it requires NAIJ to pursue

its constitutional claims through a system that provides no guarantee of judicial review, let alone timely judicial review, of a prior restraint that is depriving the public—now, at this very moment—of the crucial insights of immigration judges into the executive's overhaul of the nation's immigration system.

Even if NAIJ could challenge the Policy under Chapter 23 of the CSRA (which NAIJ continues to believe it could not, *see* ECF No. 11 at 19–26), NAIJ still would not have a guaranteed pathway to judicial review. Judicial review under the CSRA is available only for final orders of the Merit Systems Protection Board ("MSPB"), 5 U.S.C. § 1214(c), but a Chapter 23 complaint can reach the MSPB only if the Special Counsel decides—in his sole and unreviewable discretion—to petition the MSPB for corrective action, *id.* § 1214(b)(2)(C). Accordingly, NAIJ and its members could not obtain judicial review of any Chapter 23 complaint unless the Special Counsel decided to allow that review.

This is at best an uncertain path, and at worst an illusory one. During the five fiscal years running from 2020 to 2024, the Special Counsel did not file any petitions for corrective action with the MSPB. 2024 Off. of Special Couns. Ann. Rep. 16, https://perma.cc/99XK-D5ZA. The "narrowness" of this pathway to review—"and the fact that any review at all turns on the unreviewable discretion of Government officials"—makes clear that the CSRA fails to afford NAIJ an avenue of review that

is "meaningful." *See Feds for Med. Freedom v. Biden*, 63 F.4th 366, 380 (5th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 480 (2023).

This Court previously recognized that the Special Counsel has the unfettered power to thwart judicial review of NAIJ's constitutional claims, but it suggested that NAIJ should try anyway. *NAIJ*, 139 F.4th at 311 ("That is not, however, the posture of the case before us."). The implication, it seems, is that the CSRA's administrative pathway is one that must be exhausted even if it would not lead to judicial review. But this theory is irreconcilable with *Thunder Basin*. That case establishes a jurisdictional bar, not a requirement of administrative exhaustion. *Axon*, 598 U.S. at 186 (stating that the question under *Thunder Basin* is whether "Congress's creation of a 'comprehensive review process' . . . oust[s] district courts of *jurisdiction*" (quoting *Thunder Basin*, 510 U.S. at 208) (emphasis added)). It is for this reason that the most important consideration in the *Thunder Basin* inquiry is whether "a finding of preclusion could foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212–13. And that is why the Supreme Court has permitted plaintiffs to seek immediate judicial review when an administrative scheme fails to guarantee eventual review in a court of appeals. *See Axon*, 598 U.S. at 190 (explaining that the problem in *Free Enterprise Fund* was that "absent district court jurisdiction, [Petitioner] might never have had judicial recourse").

If it were true that any difficulty in obtaining judicial review through an administrative scheme could be remedied by returning to district court, then the first factor of the *Thunder Basin* inquiry would be a dead letter. Federal employees would be required to run the gauntlet of the CSRA's administrative hurdles, even where there is no reason to believe doing so would yield Federal Circuit review. That is simply not the law, and it attributes to Congress an intent that it could not have had— that federal employees may be silenced by the executive while their lawyers litigate their claims in front of administrative bodies that cannot provide meaningful relief, and with the knowledge that the pathway will likely prove a dead end.

The Supreme Court's recent decision in *First Choice* supports NAIJ's position. There, the New Jersey attorney general argued that a non-profit organization could not immediately file a federal court suit raising a First Amendment challenge to a subpoena for the identities of its donors, in part based on the attorney general's contention that the non-profit should first pursue relief in state court. 146 S. Ct. at 1128–29. The Supreme Court rejected this argument, however, because the non-profit was suffering "ongoing injuries" to its First Amendment rights "from the subpoena itself." *Id.* at 1129. For that reason, the Court held, the case did not resemble the precedent the attorney general relied on, in which the litigants being forced into alternative remedial schemes faced only "future injuries," *id.* at 1128, and "would suffer no injury" in the meantime, *id.* at 1129 (quoting

7

*Reisman v. Caplin,* 375 U.S. 440, 449–50 (1964)). This logic essentially mirrors the logic of *Axon* and is consistent with the precedent allowing federal employees to proceed directly to district court to file a pre-enforcement challenge to a prior restraint on their speech.[1]

Second, and relatedly, NAIJ would argue that the Supreme Court's decision in *Trump v. Slaughter*, 609 U.S. ___ (2026), along with the developments that this Court previously considered at step one of the *Thunder Basin* analysis, *see NAIJ*, 139 F.4th at 307–08 (citing the loss of OSC and MSPB independence), reinforce the step-two analysis above. The most important question for purposes of step two of the *Thunder Basin* analysis is, again, whether the administrative scheme would provide meaningful judicial review of the claims at issue. The loss of OSC and MSPB independence, fortified by the *Slaughter* decision, only exacerbates the risk that executive employees will thwart whatever possibility the CSRA provides for judicial review of NAIJ's claims. If the President can fire the Special Counsel at

---

[1] NAIJ previously declined to seek reconsideration of the panel's conclusion at step two of the *Thunder Basin* analysis, because the opinion ultimately ruled in NAIJ's favor and permitted it the opportunity to continue to press its claims in federal court. *See* ECF No. 48 at 14–16. Now that the Supreme Court has reversed the panel's judgment, the step-two analysis will be determinative, whether the panel reissues its earlier conclusion or, as NAIJ urges, revisits it. To the extent the Court deems NAIJ's argument to amount to an untimely petition for rehearing, NAIJ respectfully asserts that rehearing on this point is warranted because it is a question of exceptional importance and because the panel opinion's reasoning is inconsistent with Supreme Court precedent, as explained above.

will, he can ensure that the holder of that office always buries even meritorious constitutional claims. If the President can fire members of the MSPB at will, he can ensure that any claims that make it to the MSPB are delayed as much as possible before the possibility of judicial review. And if the President can pressure the MSPB to rule in ways favoring him, as recent reporting suggests he and his subordinates have already done, whatever remaining prospect of meaningful review will have been eliminated entirely. *See* Jonah E. Bromwich, Michael S. Schmidt & Rebecca Davis O'Brien, *White House Secretly Swayed Board Meant to Stop Civil Service Politicization*, N.Y. Times (June 28, 2026), https://www.nytimes.com/2026/06/28/us/politics/trump-firings-workers-merit-systems-protection-board.html.

These risks are particularly acute when it comes to a challenge to a prior restraint on speech. Every day that EOIR's policy continues in effect, immigration judges must remain silent even as public debate about immigration policy becomes more intense. If the administration can ensure that any constitutional challenge to its prior restraint on that speech is delayed or even denied altogether, then it has the power to insulate not only its speech policy from meaningful judicial review, but also its immigration policies from meaningful public discussion.

## Conclusion

For these reasons, NAIJ respectfully submits that the Court should set a briefing schedule to allow the parties an opportunity to articulate their respective views on the appropriate next steps in this case. NAIJ proposes the following schedule, but will comply with whatever schedule the Court deems appropriate, if any:

| | |
|---|---|
| July 31, 2026: | NAIJ's brief |
| August 31, 2026: | Defendant's response |
| September 18, 2026: | NAIJ's reply |

June 29, 2026                                    Respectfully submitted,

Victor M. Glasberg                          /s/ Alex Abdo
Victor M. Glasberg & Associates    Alex Abdo
121 S. Columbus Street                 Xiangnong Wang
Alexandria, VA 22314                    Ramya Krishnan
Phone: (703) 684-1100                  Knight First Amendment Institute at
Fax: (703) 684-1104                         Columbia University
vmg@robinhoodesq.com             475 Riverside Drive, Suite 302
                                                        New York, NY 10115
                                                        Phone: (646) 745-8500
                                                        Fax: (646) 661-3351
                                                        alex.abdo@knightcolumbia.org

                                                        *Counsel for Plaintiff–Appellant*

**Certificate of Compliance**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,135 words. The motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

June 29, 2026                                    /s/ Alex Abdo
                                                 Alex Abdo