**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

NATIONAL ASSOCIATION OF
IMMIGRATION JUDGES, affiliated with the
International Federation of Professional and
Technical Engineers,

        Plaintiff-Appellant,

    v.

DAREN K. MARGOLIN, in his official capacity
as Director of the Executive Office for
Immigration Review,

        Defendant-Appellee,

No. 23-2235

---

**RESPONSE TO PLAINTIFF'S MOTION FOR A BRIEFING
SCHEDULE**

The government opposes the National Association of Immigration Judges (NAIJ)'s motion requesting that this court issue an order setting a briefing schedule to permit the parties to express views on the question of how this Court should proceed in light of the Supreme Court's recent decision and remand in this case. In the government's view, the Supreme Court's decision effectively disposes of all issues remaining in this case and compels affirmance of the district court's order dismissing NAIJ's complaint. No further briefing beyond NAIJ's motion and response is necessary to reach that result.

1

Indeed, as NAIJ's motion demonstrates, if permitted, NAIJ anticipates filing a brief that asks this Court to reconsider aspects of its prior decision that were favorable to the government.  NAIJ's motion thus amounts to little more than, effectively, a request that it be permitted to file an untimely petition for rehearing of issues on which the Supreme Court denied NAIJ's cross-petition for certiorari.  That motion should be denied.

## BACKGROUND

1. Through this lawsuit, NAIJ seeks to bring a pre-enforcement constitutional challenge to a personnel policy issued by the Executive Office for Immigration Review (EOIR), a component of the Department of Justice that has delegated adjudicatory authority over immigration proceedings. That policy requires immigration judges to obtain supervisory approval for public speeches relating to their official duties.  The policy is designed to ensure that any employee speech that may be seen as bearing the imprimatur of the agency is consistent with EOIR's official positions.

NAIJ challenged the policy in the United States District Court for the Eastern District of Virginia, asserting violations of its members' First and Fifth Amendment rights.  NAIJ acknowledged that the Supreme Court has held that, under the Civil Service Reform Act of 1978 (CSRA), Congress intended federal employees to bring most work-related grievances to the

Merit Systems Protection Board (MSPB) and the Office of the Special Counsel—not to district court. *See Margolin v. NAIJ*, 146 S. Ct. 1285, 1287 (2026); *United States v. Fausto*, 484 U.S. 439, 455 (1988); *Elgin v. Department of Treasury*, 567 U.S. 1, 11-12 (2012). NAIJ thus accepted that "'the CSRA channels judicial review of challenges to covered employment actions' to the MSPB." *Margolin*, 146 S. Ct. at 1287 (quoting Opposition to Motion to Dismiss, Dkt. No. 72, pp. 2-3). NAIJ "argued only that its members' constitutional claims were not the *kind* of work-related claims that Congress intended to steer out of district court." *Id.*

The district court dismissed NAIJ's claims, holding (i) that Congress intended to preclude district court litigation over "covered actions" brought by federal employees, and (ii) that NAIJ's pre-enforcement constitutional challenge to the agency speaking-engagement policy was indeed "covered" by the CSRA. *Margolin*, 146 S. Ct. at 1287.

2. a. This Court affirmed the district court's decision in relevant part. It agreed with the district court that NAIJ challenged CSRA covered actions and that Congress intended claims of that type to be channeled through the CSRA procedures. *NAIJ v. Owen*, 139 F.4th 293, 308-13 (4th Cir. 2025); *see also id.* at 313 ("Congress designed the CSRA to divest district courts of jurisdiction to review legal challenges like those raised by NAIJ."). As this

3

Court explained, the speaking-engagement policy that NAIJ challenges "could constitute a significant change in working conditions," that was allegedly adopted "without 'proper regard for [NAIJ's members] constitutional rights.'" *Id.* at 309 (quoting 5 U.S.C. § 2301(b)(2)). NAIJ could raise that claim in a complaint to the Special Counsel under Chapter 23 of the CSRA, *id.* at 309-10, and that the claim could receive "meaningful judicial review" on appeal from the MSPB to the Federal Circuit, *id.* at 310-13.

In so holding, this Court rejected NAIJ's argument that the CSRA does not provide for meaningful judicial review because the Special Counsel may decline to bring a complaint to the MSPB. This Court explained that NAIJ had "declined to bring its claim to [the Office of Special Counsel] altogether, thereby failing to follow the statutorily prescribed administrative and judicial procedures." *Owen*, 139 F.4th at 311. The posture of this case accordingly did not present the question of whether a plaintiff may bring a meritorious constitutional challenge directly in district court after the Special Counsel has declined to bring that claim to the MSPB. *See id.* ("The CSRA precludes extra-statutory judicial review of constitutional claims asserted before an employee has utilized the remedies that are available under the statute.").

4

Likewise, this Court rejected NAIJ's argument that its claim was akin to the type of "here-and-now injury" the Supreme Court considered in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023). *See Owen*, 139 F.4th at 311. As the Court explained, the challenge in *Axon*—as in *Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010))—was to the "structure or very existence of an agency." *Id.* The "core of the plaintiffs' claim in *Axon* was that they would face 'an illegitimate proceeding, led by an illegitimate decisionmaker.'" *Id.* (quoting *Axon*, 498 U.S. at 191). But NAIJ did not identify any such "structural constitutional" challenge to the authority of EOIR of the MSPB. *Id.* at 312. And plaintiffs "cannot avoid jurisdiction stripping statutes like the CSRA by merely alleging an irreparable injury." *Id.*

This Court also held that NAIJ's constitutional challenge was not "wholly collateral to the CSRA scheme" and did not fall outside the MSPB's relative expertise. *Owen*, 139 F.4th at 312-13. To the contrary, NAIJ challenged a "significant change to its members' working conditions," and that claim was "'intertwined with or embedded in matters on which the MSPB are expert.'" *Id.* at 313 (quoting *Axon Enter., Inc.*, 589 U.S. at 195). The MSPB specializes in "ensur[ing] that Federal employees are protected against abuses by agency management, that Executive branch agencies

make employment decisions in accordance with the merit systems principles, and that Federal merit systems are kept free of prohibited practices," including violations of their constitutional rights. *Id.* (quotation marks omitted). As a result, both the Special Counsel and the MSPB are "familiar with agency speech policies, why they are implemented, and how such policies should best be designed in accordance with the Constitution." *Id.*

b. Although this Court's affirmance of the district court's reasoning completely resolved the sole issue raised on appeal, this Court nevertheless reassessed—sua sponte and without notice to the parties—the question whether Congress intended the CSRA to preclude district court-jurisdiction for *any* claims. This Court acknowledged that the Supreme Court's precedent establishes that Congress intended to preclude district court jurisdiction for claims within its scope. *Owen*, 139 F.4th at 304. Nevertheless, this Court vacated the district court's dismissal of NAIJ's complaint, concluding that Congress could only have intended to channel claims when the CSRA was "functioning as Congress intended." *Id.* This Court identified developments that it believed "called into question" the functioning and independence of the CSRA's channeling regime. *Id.* Specifically, this Court "believed that legal challenges to the tenure

protection afforded MSPB members and the Special Counsel, and the MSPB's lack of a quorum, may require a 'new examination of Congressional intent' to channel covered claims out of district court." *Margolin*, 146 S. Ct. at 1287 (quoting *Owen*, 139 F.4th at 306).  The court then remanded for factfinding into the current operation of the MSPB and Special Counsel in order to address that question of Congressional intent.  *Id.*

The government sought rehearing en banc from this aspect of this Court's decision, which was denied by a 9-6 vote.

3.  The government filed a petition for certiorari, requesting that the Supreme Court summarily reverse this Court's judgment.  The petition for certiorari urged that the sole basis for this Court's vacatur of the district court's decision rested upon an argument that had not been raised by the parties and therefore violated the principles of party presentation.

NAIJ filed a cross-petition for certiorari, urging the Supreme Court to deny the government's request for summary reversal and instead grant certiorari on the question whether this Court erred in holding that NAIJ's specific claims are covered by (and must be channeled through) the CSRA.

4.  On May 26, 2026, the Supreme Court granted the government's petition for certiorari, denied NAIJ's cross petition, and reversed the judgment of this Court for violation of party presentation principles.  As the

Court explained, the parties' arguments on appeal were "confined . . . to the narrow question whether [NAIJ's] claims were, in fact, covered" by the CSRA. *Margolin*, 146 S. Ct. at 1288. This Court violated the party presentation principles when it "transformed [NAIJ's] argument that the CSRA did not channel *its* claims into one that the CSRA might not—in light of current conditions—channel *any* claims." *Id.*; *see also id.* ("As [NAIJ] conceded below, our precedent establishes that Congress, through the CSRA, intended to channel covered claims to the MSPB.").

There were no noted dissents from the Supreme Court's summary reversal or from the denial of NAIJ's cross-petition for certiorari. Justice Thomas, joined by Justice Barrett, wrote a separate decision concurring in the reversal of this Court's judgment, and explaining why, in addition to violating traditional party-presentation principles, this Court's novel legal test "was also wrong on the merits." *Margolin*, 146 S. Ct. at 1289 (Thomas, J., concurring).

## DISCUSSION

This Court's internal operating procedures provide that, when the Supreme Court remands a case for further proceedings consistent with its opinion, this Court may "require additional briefs and oral argument, summarily dispose of the case, or take any other action consistent with the

8

Supreme Court's opinion." 4th Cir. Internal Operating Procedures 41.2. Here, no questions of law or fact remain open after the Supreme Court's decision. The appropriate disposition is for this Court to affirm the district court's dismissal of NAIJ's complaint. No further briefing beyond the current motions to govern further proceedings is necessary for this Court to dispose of the case on remand from the Supreme Court.

1. The Supreme Court reversed this Court's vacatur of the district court's dismissal of NAIJ's complaint, concluding that the vacatur was "based on an issue the parties had not raised." *Margolin*, 146 S. Ct. at 1286-87. As the Supreme Court explained, NAIJ conceded on appeal that Supreme Court precedent holds that Congress's intent to preclude district court jurisdiction over CSRA-covered actions is fairly discernible from the statutory scheme. *Margolin*, 146 S. Ct. at 1287. The only question before this Court was thus whether NAIJ's specific claims were covered by the CSRA. *Id.* This Court correctly answered that question, affirming the district court's conclusion that NAIJ's challenge to the speaking-engagement policy was covered by Chapter 23 of the CSRA. *See Owen*, 139 F.4th at 308-13.

The Supreme Court's reversal of this Court's judgment does not disturb this aspect of this Court's opinion. Instead, the Court reversed

9

solely on the ground that this Court "*sua sponte* addressed a much broader [question]" than the one presented to it—it transformed NAIJ's argument "that the CSRA did not channel *its* claims into one that the CSRA might not—in light of current conditions—channel *any* claims." *Margolin*, 146 S. Ct. at 1288. And it did so "without giving either side a chance to address its theory." *Id.* The Supreme Court held that this departure from the traditional principles of party presentation constituted an abuse of discretion, reversed the judgment of this Court, and remanded for further proceedings. *Id.*

Notably, the Supreme Court's holding leaves intact the aspects of this Court's opinion concluding that NAIJ's specific claims are covered by the CSRA and must be channeled through the MSPB. Indeed, the Supreme Court denied NAIJ's cross-petition for review challenging that aspect of this Court's decision, and its opinion refers favorably to this Court's discussion of that issue as being consistent with its precedent. *See Margolin*, 146 S. Ct. at 1287 ("Like the District Court, . . . the court [of appeals] recognized our precedent holding that 'Congress designed the CSRA to divest district courts of jurisdiction to review legal challenges' like respondents." (quoting *Owen*, 139 F.4th at 313)). Because that was the only question presented to this Court, this Court's prior undisturbed conclusion compels the

affirmance of the district court's order dismissing the complaint. Additional briefing is not necessary for this Court's disposition of this case on remand from the Supreme Court.

2. NAIJ requests that this Court set a briefing schedule to permit it to "fully articulate" its respective views on "appropriate next steps." Mot. at 4. As discussed above, however, there remain no open issues for this Court to resolve, much less any issues that require full briefing.

The contents of NAIJ's motion only underscore that further briefing is not necessary. NAIJ suggests that, if this Court permits additional briefing, it would ask this Court to "revisit" its "earlier opinion" that NAIJ's challenge to the speaking-engagement policy is a CSRA covered action. Mot. at 4. NAIJ's motion for further briefing is thus, effectively, a request that it be permitted to seek untimely rehearing of issues that this Court has already decided and on which the Supreme Court just denied certiorari.

Indeed, the specific arguments NAIJ previews in its motion merely repackage the arguments it unsuccessfully presented to this Court and the Supreme Court. NAIJ argues, for example, that the Supreme Court's recent decision in *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026) supports its claim that meaningful judicial review is not available under Chapter 23 of the CSRA. Mot. at 4-5. But NAIJ urges that

11

the logic of *First Choice* "essentially mirrors the logic of *Axon* [*Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023)]," Mot. at 8—a case that NAIJ relied upon heavily in its prior briefing before this Court, and that was distinguished at length in this Court's prior opinion, *see Owen*, 139 F.4th at 311-12. This Court's prior decision is thus entirely consistent with *First Choice*, and petitioner's motion does not demonstrate that further briefing is warranted on an issue that has already been extensively litigated.

NAIJ also asserts that *Trump v. Slaughter*, 609 U.S. ___ (2026) "fortifie[s]" the loss of Office of Special Counsel and MSPB independence about which this Court previously expressed concern. Mot. at 8. NAIJ urges that this development underscores its already-rejected argument that there is no meaningful judicial review under the CSRA. But NAIJ's arguments on this score are not in any way limited to its specific claims. *See* Mot. at 9. Instead, NAIJ repeats the argument advanced by this Court that any loss of independence threatens meaningful judicial review of all covered claims. *Id.* No further briefing is necessary on that question. It would be highly improper for this Court—having just been summarily reversed by a unanimous Supreme Court—to repackage the argument that the Supreme Court just rejected in a new doctrinal garb and reach the same result.

12

Because NAIJ has not demonstrated that there remain any open issues for this Court to resolve, this Court should deny NAIJ's motion for further briefing.  As NAIJ appears to acknowledge, its arguments amount, effectively, to an untimely petition for rehearing.  Mot. at 8 n.1.  But NAIJ has not shown that any of the questions identified in its motion are of sufficiently exceptional importance to warrant that extraordinary relief.  This Court need not and should not invite further briefing in response to NAIJ's untimely request that this Court reconsider issues on which the Supreme Court just denied certiorari.

## CONCLUSION

For these reasons, this Court should deny the motion for a briefing schedule.

Respectfully submitted,

MICHAEL S. RAAB
*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
  (202) 353-9039
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7710*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, D.C.  20530*

13

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d).  This motion response contains 2,589 words.

/s/ Jennifer L. Utrecht
Jennifer L. Utrecht

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Jennifer L. Utrecht
Jennifer L. Utrecht